# Richmond

## HUGH A. BARRETT V. VAUGHAN AND COMPANY, BANKERS, A CORPORATION, AND OTHERS.

January 17, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Junius W. Pulley,* for the appellant.

*John C. Parker, Jr.,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

Barrett and Brother, a partnership, executed a negotiable note dated June 9, 1921, for $20,000, payable on demand to the order of Vaughan and Company, bankers. Before delivery the note was indorsed by several parties, among them one H. A. Barrett, not a partner. On May 1, 1922, the payee

obtained a judgment by confession for the full amount of the note, including interest, costs and attorney's fee, against the makers and all indorsers. Two executions were issued on the judgment, one was returned by the sheriff marked "no effects" and a small sum was collected on the other. On December 6, 1932, Vaughan and Company, bankers, claiming the amount due and unpaid was $15,403.22, instituted this suit for the purpose of subjecting several tracts of land to sale to satisfy the judgment lien. To the bill H. A. Barrett filed his answer and cross-bill, claiming the judgment was not a valid obligation against him, and praying that complainant be enjoined from enforcing it. The trial court held that the defenses set up were not available to respondent, and entered a decree declaring the judgment valid and referring the cause to a commissioner to take accounts. From that decree H. A. Barrett obtained this appeal.

Appellant alleges in his answer and cross-bill various matters which he claimed rendered the judgment invalid as to him, but in his petition he states his case thus:

"* * * Inasmuch as the only defense in this case, that is the extension of time to a maker or the principal debtor is the only defense available under the pleadings to the indorser, it is of primary importance to ascertain first of all whether their contract makes them principal debtors or parties secondarily liable."

The ground upon which appellant's whole case is based is the allegation that he was secondarily liable on the instrument; that his relation to the makers was that of surety and principal, and that this fact was known to the payee. To prove this, he exhibited the following instrument on which the judgment had been obtained:

"$20,000.

"On demand after date we promise to pay to the order of Vaughan and Company, bankers, without offset, for value received, Twenty Thousand and no/100 Dollars, negotiable and payable at Vaughan and Company, and we, and each of us, makers and endorsers jointly and severally waive the

benefit of our homestead exemption as to this debt and also waive presentment for payment, demand, protest, and notice of dishonor. We appoint C. C. Vaughan, Jr., attorney in fact, with authority to confess judgment in any court of law, or before the clerk thereof, upon defalcation for the amount of this obligation and cost and attorney's fees of ten per centum for collection, and authorize execution to issue forthwith for amount of such judgment.

(Signed) "BARRETT AND BROTHER" (Seal)

*"Endorsement*

"We, the endorsers named below, waive presentment, protest, demand of payment and notice of non-payment and guarantee the payment of the within note at maturity, or any time thereafter, and agree that all the provisions therein shall apply to and bind us as though we were makers.

(Signed)    "E. M. Barrett
"Lina Barrett
"T. H. Barrett
"Effa Barrett
"H. A. Barrett"

Appellant admits that the contract of indorsement authorized the attorney named in the instrument to confess judgment against him, as well as the other indorsers and makers, but contends that it did not otherwise enlarge the contract of indorsement, as fixed by the Negotiable Instruments Law (Code 1919, section 5563 *et seq.*).

The obligation of a maker and that of a mere indorser are essentially different, the one is absolute and the other contingent. Section 56 of the English Bill of Exchange Act (1882) provides: "Where a person signs a bill otherwise than as drawer or acceptor, he thereupon incurs the liabilities of an indorser to a holder in due course."

Section 63 of the Negotiable Instruments Law (Code, section 5625) provides: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor

is deemed to be an indorser, *unless he clearly indicates by appropriate words his intention to be bound in some other capacity."* (Italics supplied.)

The italicized words were added to the Negotiable Instruments Law for the purpose of permitting an indorser to enlarge or broaden his liability. This case does not involve the contract of an indorser as fixed by the Law Merchant. It involves a contract which the act permits and which appellant has voluntarily assumed. The contract itself defines and limits the nature and extent of the obligation incurred.

On the face of the instrument there are three material provisions: (1) The definite promise to pay the amount of the obligations; (2) the waiver of certain rights and formalities; (3) the appointment of a named attorney with authority to confess judgment. Provisions (1) and (2) are absolute and unconditional, binding upon the parties who signed the instrument as makers. Their liability is definitely fixed by law. Provision (3), so long as the debt remains unpaid, is optional, to be exercised or not if and when the holder so elects.

We then turn to the contract of the indorsers and find that it, also, contains three material provisions: (a) The waiver of certain requirements; (b) guaranty of payment of the obligation at maturity, or at any time thereafter; (c) the agreement that all the provisions of the instrument shall apply to and be binding upon the indorsers as though they were makers.

The waiver of the formal steps ordinarily required to fix the liability of a simple indorser is expressed in terms in general use, and no comment thereon is necessary. The expression "guarantee the payment of the within note at maturity or any time thereafter" radically changes the obligation of a simple indorser. It is an absolute, unconditional undertaking on the part of the guarantors that the obligors will pay the debt, and by the use of the term "at maturity or any time thereafter" continues this liability for an indefinite period. The court ordinarily limits the ex-

pressions "at any time" or "any time thereafter" to what is a reasonable time, determined in the light of the facts and circumstances of each particular case. Inasmuch as this obligation was payable on demand, the right of action against the makers and guarantors immediately accrued.

In *Wachovia Bank & Trust Co.* v. *M. S. Clifton,* 203 N. C. 483, 166 S. E. 334, 335, 84 A. L. R. 725, Chief Justice Stacy said: "A 'guaranty' is a contract, obligation or liability arising out of contract, whereby the promisor, or guarantor, undertakes to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself in the first instance liable to such payment or performance. * * * And the right to sue upon said contract or guaranty arises immediately upon the failure of the principal debtor to pay the debt at maturity or to meet his obligation according to its tenor. *Beebe* v. *Kirkpatrick,* 321 Ill. 612, 152 N. E. 539, 47 A. L. R. 891. * * *

"Guarantors are not sureties; nor are they indorsers, though with respect to the plea of the statute of limitations, their liability is more nearly analogous to that of the latter than to that of the former."

If the obligation of the contract had been limited to the guaranty, it would have been necessary to decide whether an extension of time of payment would have discharged the guarantors, but that is not necessary in this case because the contract of indorsement, in addition to the guaranty, contained the following, "and agree that all the provisions therein shall apply to and bind us as though we were makers."

Appellant concedes that the word "provisions" applies to the authority given the attorney to confess judgment, but contends that it does not apply to the promise to pay, that this part of the instrument is not a provision but the instrument itself.

We have considerable difficulty in following this line of reasoning. There is nothing peculiar about the word *provision.* It has a definite and well-understood meaning. Web-

ster's New International Dictionary defines it as "that which is stipulated in advance; a condition; a previous agreement; a proviso; as, the provisions of a contract; the statute has many provisions."

In *Blackman* v. *U. S. Casualty Co.*, 117 Tenn. 578, 103 S. W. 784, 786, this is said: "The word 'provision' [as used in a policy insuring one subject to the "provisions, conditions, definitions and limits herein"], of course indicates nothing technical, but is a general term, which may include either a promise or undertaking of some kind, or a condition."

Appellant seeks to put a strained construction upon the contract of indorsement; he selects one of the several provisions which is favorable to him and admits that he is bound by that, but contends that he is not bound by the others, when the very terms of the agreement state that "all the provisions" shall apply to and bind him as though he were a maker.

"It is a fundamental rule in the interpretation of written instruments that all words used in it must be given effect if reasonably possible, and they are to be given their ordinary and natural meaning, unless there is some necessity apparent for a different construction. * * * This applies as well to negotiable instruments as to deeds, wills or non-negotiable contracts." *Berenson* v. *London Ins. Co.*, 201 Mass. 172, 87 N. E. 687.

The obligation of the maker of an instrument is well-known, clear-cut and unambiguous. While an indorser does not usually assume such an obligation, it is his privilege to so bind himself if he desires, and when by appropriate language he has so expressed his intention, the courts are bound to hold him to the obligation he has voluntarily assumed. See *Kistner* v. *Peters,* 223 Ill. 607, 79 N. E. 311, 7 L. R. A. (N. S.) 400, 114 Am. St. Rep. 362; *Johnson* v. *Phillips,* 143 Md. 16, 122 Atl. 7; *Carothers* v. *Callahan,* 207 Ala. 611, 93 So. 569; *Stephens* v. *Bowles,* 202 Mo. App. 599, 206 S. W. 589; *Hibernia Bank* v. *Dresser,* 132 La. 532, 61 So. 561; *Dillard* v. *Farmers' Mercantile Co.,* 190

N. C. 225, 129 S. E. 598; *White* v. *Howland,* 9 Mass. 314, 6 Am. Dec. 71. From the instrument itself, it appears that appellant has voluntarily made himself primarily liable thereon, hence the question of whether time was extended to the makers is immaterial.

Appellant objected to the action of the court in denying him the right to introduce oral evidence for the purpose of proving that when he signed the instrument the payee assured him that no responsibility of any kind would attach to him unless and until all rights and remedies against the makers had been exhausted.

■ If this allegation had been established it would have varied the terms and conditions of the written contract. The general rule is that where the language of a contract is uncertain or ambiguous, extraneous evidence is admissible to prove the true intention of the parties; otherwise, such evidence is rejected.

■ The identical question was decided by the Special Court of Appeals in an opinion delivered by Judge McLemore in *Crafts* v. *Broadway Bank,* 142 Va. 702, 128 S. E. 364, 367, where the authorities were reviewed and this conclusion reached:

"It may be confidently affirmed, as the settled law of this state, that where a negotiable note or other unconditional promise to pay at a stipulated time is regular upon its face, and is delivered to the payee as a valid and binding obligation for ever so short a time, no contemporaneous parol agreement can be set up to show that payment was not to be demanded at maturity, or until attached collateral had been exhausted, or upon the happening of any other subsequent event not mentioned in the note itself. All such efforts have as their end to change or vary the terms of the written contract, which we think is contrary to the great weight of authority, and is clearly in conflict with the previous decisions of this court."

For the reasons stated, the decree of the trial court is affirmed.

*Affirmed.*