### Richmond

PASCOE STEEL CORPORATION

V.

RUSS L. SHANNON

December 3, 1982.

Record No. 800915.

Present: All the Justices.

Thomas L. Phillips (Crowell, Nuckols, Aust & Phillips, on brief), for appellant.

John J. Gill (E. Peter Kane; Gilmer, Sadler, Ingram, Sutherland & Hutton, on brief) for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal presents a question as to the efficacy of a written guaranty agreement. Pascoe Steel Corporation, payee of a promissory note dated April 19, 1977, purportedly made by Piedmont

Development Corporation, sued Joe F. Hale and Russ L. Shannon on a written guaranty agreement they had signed, which guaranteed the prompt payment of any debt which Piedmont "may now or at any time hereafter owe to Pascoe." Hale made no appearance and suffered a default judgment. Shannon filed grounds of defense.

At a bench trial Pascoe introduced the note and guaranty agreement. Shannon admitted that he and Hale had signed the guaranty. Shannon testified that he had been president of Piedmont when he undertook to guarantee its obligations to Pascoe by signing the guaranty on March 29, 1976, but that he had sold his stock to Hale and terminated all of his connections with Piedmont around December 1, 1976. After Shannon's departure, Hale became president of Piedmont and signed the note, dated April 19, 1977, evidencing a debt to Pascoe. Shannon testified that he knew nothing about this obligation, but that he would not have considered himself liable because he assumed that the guaranty was only effective "for the time that I was associated with Piedmont Development." He further testified that Pascoe's district manager in Pittsburgh, Pa. was aware of his departure from Piedmont and gave him the impression that "I didn't have to be concerned about it [the guaranty] once I left the company."

Shannon argued in the trial court, as he does here, that the note was signed by "Piedmont Development" and that Pascoe had failed to prove that it was an obligation of the corporation whose debts he had guaranteed.

The note is signed:

"GIVEN UNDER MY HAND AND SEAL."

<div style="margin-left:3em">

[Signature] Joe F. Hale      Corp.
Joe F. Hale, President      (SEAL)
Piedmont Development

</div>

The word "Corp." is typed on the original, above the printed word "(SEAL)." Above these words appears the impression, clearly legible on the original, of an embossed seal bearing the words "Piedmont Development Corp."

Shannon further argued that the guaranty ceased to bind him when Pascoe became aware of the termination of his relationship with Piedmont. The guaranty provides:

> This shall be a continuing guaranty and shall cover all liabilities of Builder [Piedmont], both joint and several, incurred up to such time as Pascoe is given written notice by the undersigned to make no further advances on the security of this guaranty.

Shannon concedes that he never gave Pascoe written notice to terminate the guaranty, but contends that its effect should have continued only for a reasonable time and that it would be unreasonable to apply it to a debt incurred after Pascoe knew of his departure from Piedmont.

The trial court held that Pascoe had failed to prove that the note was a corporate obligation, and that there was no evidence that the note, even if that of the corporation, arose out of a transaction within the terms of the guaranty. We cannot agree.

> [T]he presence of such [corporate] seal establishes, *prima facie,* that the instrument to which it is affixed is the act of the corporation, and dispenses with the necessity of any proof, on the part of the person claiming under it, that it was executed by the proper officers, that they had authority to so execute it, and that all proceedings, of whatever character, necessary to such authority, had been duly given, unless the corporation shall first by competent evidence on its part have rebutted the presumption arising from the presence of the common seal. [Citation omitted].

*B.V. Pocahontas Co.* v. *Browning,* 137 Va. 34, 52, 120 S.E. 247, 252-53 (1923). Where the instrument bears both a corporate seal and the purported signature of corporate officers, the presumption has been held to apply even in the absence of the requisite number of officers' signatures and even where the instrument lacks the corporate name. 18 Am. Jur.2d *Corporations* §158 (1965). The fact that the word "Corp." was typed above the printed word "(SEAL)" is further evidence of the intent of the parties to the instrument that it was to be evidence of a corporate debt. The use of "Corp." for "Corporation" in the seal itself is of no significance. These words may be used interchangeably for all purposes. Code § 13.1-6.

No evidence was introduced to rebut the presumption created by the seal. Although Shannon expressed doubt at trial that the corporation had incurred the debt to Pascoe, he testified that

he had no knowledge of the transaction. His Grounds of Defense twice refers to the note as an instrument executed by "Joe F. Hale and Piedmont Development Corporation." The trial court erred in finding that Pascoe had failed to carry its burden of proving that the note was a corporate obligation.

What, then, was Shannon's liability under the guaranty? We have consistently held that a guaranty, unlimited as to time, but given in circumstances evidencing the guarantor's intent to cover a series of transactions, will be construed as a continuing one. The time of its duration and the amount to be covered must be reasonable in light of the circumstances of each particular case. *Looney v. Belcher,* 169 Va. 160, 168-69, 192 S.E. 891, 894 (1937); *Barrett v. Vaughan & Co.,* 163 Va. 811, 816, 178 S.E. 64, 65 (1935). No contention is made that the amount in suit is unreasonable, and we cannot say that the thirteen months between the date of the guaranty and the date of the note constitute an unreasonable lapse of time in the circumstances.

Shannon argues that the guaranty was a continuing offer, given to induce Pascoe to extend credit to Piedmont, but subject to withdrawal until accepted by Pascoe's extension of credit in reliance upon it. Assuming the correctness of this proposition, it follows that Pascoe is entitled to rely on the terms of the guaranty as to the only agreed method of withdrawing it—"written notice by the undersigned to make no further advances on the security of this guaranty." Pascoe, having received no such notice, accepted the offer by extending credit to Piedmont. Pascoe was entitled to look to the guaranty when doing so.

For these reasons, the judgment of the trial court will be reversed and the case remanded for entry of a judgment in favor of Pascoe in accordance with the provisions of the note.

*Reversed and remanded.*