MEDCOM, INCORPORATED, ET AL.

V.

C.  ARTHUR WEAVER COMPANY, INCORPORATED, ET AL.

Record No. 830540

September 5, 1986

Present: All the Justices

81

*William R. Rakes (William J. Creech, Jr.; Karen Webb Mc-Cutchenon; Gentry, Locke, Rakes & Moore*, on briefs), for appellants.

*Daniel S. Brown (Joseph A. Matthews, Jr.; John D. Eure; Hazlegrove, Dickinson, Rea, Smeltzer & Brown; Woods, Rogers, Muse, Walker & Thronton*, on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This appeal arises out of an action brought by C. Arthur Weaver Company, Incorporated (Weaver), against Medcom, Incorporated (Medcom), and Medical Services of America, Incorporated (Medical Services). Medcom filed a counterclaim against Weaver and joined Clippard Instrument Laboratory, Inc. (Clippard), as a third-party defendant.

Weaver instituted the action against Medcom on an account for goods and against Medical Services as guarantor on the account. Medcom and Medical Services filed joint grounds of defense denying liability. Medcom also filed its counterclaim against Weaver and its third-party motion for judgment against Clippard, alleging breach of warranty against both.

At the conclusion of all the evidence, the trial court struck Medcom's and Medical Services' evidence in defense of Weaver's claim and submitted to the jury the amount of Weaver's damages as the only issue. The court also struck Medcom's evidence on its counterclaim against Weaver and on its third-party claim against Clippard. Thereafter, the jury returned a verdict against Medcom for $31,109.73, and against Medical Services for $80,483.49, as guarantor of Medcom's obligation to Weaver.

The principal issues presented in this appeal are whether the trial court erred by (1) striking Medcom's evidence presented as a defense to Weaver's account claim; (2) construing Medical Services' guaranty letter as creating a continuing obligation; and (3) striking Medcom's evidence on its counterclaim and third-party motion for judgment.

Because the trial court struck Medcom's and Medical Services' evidence, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to them. *Meeks* v. *Hodges*, 226 Va. 106, 109, 306 S.E.2d 879, 881 (1983). Weaver is a wholesale distributor of mechanical, electro-mechanical, and fluid drive products. Clippard is a manufacturer of pneumatic products for which Weaver acts as a distributor. Medical Services is a health service company which provides a variety of services, including the rental of certain health care equipment to individual patients. Medical Services rents a device called an oxygen concentrator, which extracts pure oxygen from the air and makes it available to the patient.

After having purchased its concentrators from various manufacturers, Medical Services, in 1978, decided to manufacture its own

concentrator. Medical Services, therefore, established Medcom as a separate corporate entity to carry out that purpose.

Because Medcom lacked engineering expertise, it contacted Weaver for assistance in manufacturing the concentrator. Weaver, in turn, contacted Clippard to obtain the benefit of Clippard's expertise in supplying the appropriate parts. In order for Medcom to obtain the credit necessary to purchase parts from Weaver, Medical Services signed two letters guaranteeing Medcom's payment for parts ordered.

Medcom relied on Weaver's and Clippard's expertise in developing a prototype oxygen concentrator. For example, although all oxygen concentrators then on the market used electrical valves, Medcom accepted Clippard's recommendation to use pneumatic valves. Additionally, Clippard and Weaver were instrumental in Medcom's decision to incorporate into its concentrator Clippard's "cam timer," a mechanism crucial to the concentrator's satisfactory operation.

Almost all the component parts used in Medcom's concentrator were purchased through Weaver. Weaver sold Medcom the compressors, compressor housings, base plates, fans, major valves, motors, and cam timers. Indeed, according to the uncontradicted evidence, "[p]ractically everything in the unit, maybe with the exception of the pipe and the caps, was bought through Weaver." Clippard manufactured the primary valve system, the cam timer, and certain miscellaneous parts.

Using the valve configuration, piping, and plastic tubing recommended by Weaver and Clippard, Medcom produced approximately 1200 oxygen concentrator units. Although Weaver and Clippard recommended the parts for the concentrator and represented that they would perform their intended function, the following problems arose: (1) the piping connections developed leaks; (2) the valves in the cam timer unit stuck in either the open or closed position; (3) the shutoff valves malfunctioned; and (4) the acrylic subplates recommended by Clippard to reduce leakage merely compounded the problem.

## I. *Medcom's Defense*

First, we consider whether the trial court erred in striking Medcom's evidence of Weaver's alleged breach of an implied warranty of fitness for a particular purpose. Weaver argues that the trial court correctly struck Medcom's evidence because (1)

Medcom did not plead breach of implied warranty of fitness for a particular purpose, and (2) the evidence presented at trial, in any event, was insufficient to create a jury issue on the alleged breach of implied warranty.

In Paragraph 7 of its motion for judgment, Weaver alleged:

> 7. All valves and other components sold to Medcom by Weaver were in proper working order when delivered . . . ; further, all such valves and other components are not defective and *are fit for the purpose for which they were intended to be used by Medcom*, although no such warranty was made to Medcom by Weaver.

(Emphasis added.) In its grounds of defense, Medcom "denie[d] each and every allegation of Paragraph 7." Thus, Medcom expressly denied Weaver's assertion that the parts were "fit for the purpose for which they were intended." Medcom also denied the assertion that Weaver had not made any warranty of the parts. The issue of implied warranty, therefore, was before the court, entitling Medcom to present evidence in support thereof.[1]

Accordingly, we must determine whether Medcom's evidence created a jury issue concerning Weaver's alleged breach of an implied warranty of fitness for a particular purpose. Code § 8.2-315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

In order to recover under Code § 8.2-315, a buyer must prove that (1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know

---

[1] The trial court and Weaver's counsel were aware at trial that Medcom was asserting breach of an implied warranty for a particular purpose. In response to the court's inquiry, Medcom's trial counsel (different from counsel on appeal) stated:

> I think I have shown that Medcom relied upon the expertise of Clippard and Weaver when they sold them the product.

> In other words, I have to get within that part of the Uniform Commercial Code which allows a Jury to decide whether or not the parts were suitable for the purpose for which they were designed.

the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer in fact relied upon the seller's skill or judgment.

In the present case, Medcom introduced evidence from which the jury reasonably could infer that (1) Weaver and Clippard knew the particular purpose for which Medcom required the parts, (2) Weaver and Clippard knew Medcom was relying on their skill or judgment in selecting and furnishing appropriate parts, and (3) Medcom relied upon Weaver's and Clippard's skill or judgment. There was also evidence from which the jury reasonably could infer that the parts were not reasonably fit for their intended purpose, thereby causing the concentrator to malfunction and fail.

■ When a seller breaches an implied warranty of fitness for a particular purpose, and the warranted goods have no value except for that purpose, the purchaser may assert the breach as a complete defense to the seller's action for the purchase price. Here, there was evidence to support a finding that the component parts manufactured for and sold to Medcom were not suitable for their intended purpose, and no evidence suggests that the parts had any value except for that purpose. Consequently, Medcom was entitled to assert a breach of implied warranty as a complete defense to Weaver's action.

■ The resolution of conflicting evidence is a function of the jury. Here, the evidence relating to an implied warranty and breach thereof was conflicting and should have been submitted to the jury to resolve the conflicts. We hold, therefore, that the trial court erred in striking the evidence Medcom presented in defense of Weaver's action for the purchase price.

## II. *Medical Services' Defense*

Next, we consider whether the trial court correctly construed Medical Services' guaranty as a continuing one. Because Medcom was a new company without established credit, Weaver obtained from Medical Services a letter of guaranty. The letter, dated March 6, 1979, was written by Charlie Smith, a Medcom employee authorized by Medical Services to make the guaranty. The letter stated:

This letter is in reference to our recent large orders. In the event that we discontinue buying from your company, for

any reason, Medical Services of America agrees to purchase all stock for which you have purchase orders from [us].

The record shows that Medcom has paid for all purchase orders Weaver had on hand on March 6, 1979.

Subsequently, at Weaver's request, Medical Services sent Weaver a second letter, guaranteeing Medcom's purchases made during the 90-day period beginning November 1, 1979. Likewise, the record shows that Medcom has paid for all purchase orders placed during the period provided in the second letter.

Smith, called by Weaver, testified that the March 6 letter guaranteed only those purchase orders Weaver had on hand on March 6, 1979. Nevertheless, the trial court ruled that the March 6 letter, as a matter of law, continued to guarantee payment of all purchase orders received by Weaver after March 6, 1979.

In support of its argument that the March 6 letter was a continuing guaranty, Weaver cites *Pascoe Steel* v. *Shannon*, 224 Va. 530, 298 S.E.2d 97 (1982), where we said: "a guaranty, unlimited as to time, but given in circumstances evidencing the guarantor's intent to cover a series of transactions, will be construed as a continuing one." *Id.* at 534, 298 S.E.2d at 99. The guaranty in *Pascoe*, however, unlike the March 6 letter, expressly stated that it was a "continuing guaranty," *id.* at 533, 298 S.E.2d at 98, covering all liabilities incurred "now or at any time hereafter," *id.* at 532, 298 S.E.2d at 97.

■ The March 6 letter was written in reference to Medcom's "recent large orders" and informed Weaver that, in the event Medcom discontinued purchasing parts from Weaver, Medical Services would "purchase all stock for which [Weaver had] purchase orders from [Medcom]." The March 6 letter is susceptible to more than one reasonable interpretation, one being the interpretation given by Smith. Moreover, a jury reasonably could infer that Weaver's request for a second guaranty supports Smith's interpretation of the March 6 letter. Because reasonable minds could differ as to the meaning of the March 6 letter, we hold that the trial court erred in refusing to submit the resolution of this issue to the jury.

### III.  *Medcom's Counterclaim and Third-Party Motion for Judgment*

The trial court struck Medcom's evidence on its counterclaim against Weaver and on its third-party claim against Clippard, finding, *inter alia*, that Medcom failed to produce sufficient evidence of damages. Thus, viewing the evidence in the light most favorable to Medcom, we must consider whether Medcom produced sufficient evidence of monetary damages to create a jury issue.

In its counterclaim and third-party motion for judgment, Medcom sought damages of $750,000 for (1) loss of business reputation, (2) loss of profits, and (3) payment for defective component parts. Medcom presented no evidence touching upon loss of business reputation or loss of profits. Moreover, Medcom points to no evidence indicating the amount it paid Weaver for the defective component parts, and our examination of the record discloses none.

Although not pleaded, Medcom attempted to prove two other elements of damage: (1) the cost of defective parts removed from concentrator units, and (2) the cost of labor and replacement parts incurred in repairing concentrator units. Medcom's witness testified that the inventory of defective parts amounted to $90,849 and that replacement costs amounted to $19,827.65. The witness, however, conceded that an undetermined amount of the defective inventory and replacement costs was attributable to defective parts acquired from sources other than Weaver and Clippard.

■ The trial court ruled that Medcom's evidence relating to these two elements of damage was insufficient to create a jury issue, and we agree. Although "[p]roof of absolute certainty as to the amount of loss or damage is not essential," *duPont Co.* v. *Universal Moulded Prod.*, 191 Va. 525, 572, 62 S.E.2d 233, 255 (1950), a claimant must prove "with reasonable certainty the amount of damages and the cause from which they resulted," *Carr* v. *Citizens Bank & Trust*, 228 Va. 644, 652, 325 S.E.2d 86, 90 (1985); *see Hale* v. *Fawcett*, 214 Va. 583, 585, 202 S.E.2d 923, 925 (1974).

■ Ordinarily, it is the jury's function to determine whether and to what extent a litigant has been damaged. In the present case, however, Medcom's evidence of damages was vague, indefinite, and speculative. We hold, therefore, that the trial court prop-

erly struck Medcom's evidence on its counterclaim and third-party claim.

## IV. *Conclusion*

We will reverse the portion of the trial court's judgment striking Medcom's and Medical Services' evidence in defense of Weaver's account claim, vacate Weaver's damage award, affirm the portion of the judgment striking Medcom's evidence on its counterclaim and third-party motion for judgment, and remand the case for a new trial limited to Weaver's claims against Medcom and Medical Services.

*Affirmed in part,*
*reversed in part,*
*and remanded.*