## THE BANK OF SOUTHSIDE VIRGINIA

### V.

## KAY D. CANDELARIO, ET AL.

Record No. 871432

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

* Justice Thomas prepared and the Court adopted the opinion in this case prior to the effective date of his resignation, November 1, 1989.

*John W. Edmonds, III (Thomas H. Rose, Jr.; Mays & Valentine*, on briefs), for appellant.

*Theodore J. Burr (W. Allan Sharrett; wornom & Sharrett*, on brief), for appellee Kay D. Candelario.

No brief or argument for appellee Branch W. Vincent, Jr.

Justice Thomas delivered the opinion of the Court.

In this appeal, we decide whether the trial court erred in failing to enforce a guaranty agreement executed by Kay D. Vincent, who later became Kay D. Candelario, (hereinafter referred to as Candelario) in favor of The Bank of Southside (the Bank) guaranteeing loans made by the Bank to the guarantor's then husband, Branch W. Vincent, Jr. (Vincent).

The case is before the Court on a written statement of facts. On March 29, 1982, Candelario executed a guaranty for the indebtedness of Vincent to the Bank. The guaranty was unlimited as to time or amount. Prior to March 29, 1982, Candelario had executed other guaranties on behalf of Vincent.

On April 19, 1985, Vincent executed a renewal note, payable to the Bank on May 19, 1985, in the amount of $35,806.70. At the time Vincent executed the renewal note, unbeknownst to the Bank, Vincent and Candelario had been separated for about eight months. The Bank had made no inquiry into the couple's marital status.

After June 6, 1986, Vincent failed to make any payments on the note. At that time, the balance due was $31,954.49. The Bank made written demand upon both Vincent and Candelario. They both refused to pay. The Bank filed suit. Vincent defaulted and judgment was entered against him on that basis. Candelario filed an answer in which she asserted, among other things, that the March 29, 1982 guaranty was "incomplete on its face" because it contained no limitation on liability.

The matter was tried to the court sitting without a jury. The Bank proved the note, the guaranty, the indebtedness, the Bank's demand for payment, and the defendants' refusal to pay. Candelario presented no evidence.

After all the evidence was in, but before the trial court ruled in the case, Candelario made a motion to dismiss. In her brief in support of that motion, Candelario set forth three reasons why the Bank's case against her should be dismissed:

1.  that the provisions of the guaranty allowing it to remain in force for an unlimited period of time were unreasonable, and therefore rendered the guaranty void;

2.  that the provisions of the guaranty rendering the amounts secured unlimited were likewise unreasonable, and therefore rendered the document void; and

3.  that in any event, the guaranty failed for want of consideration at the time of its execution.

On October 6, 1987, the trial court, without stating its rationale, granted Candelario's motion to dismiss. From that order the Bank appeals.

■ We focus first upon the question of the period of time during which the guaranty was to remain in effect. The pertinent language from the guaranty reads as follows:

This instrument is intended to be . . . valid and continuous without other or further notice to us or any of us . . . until

notice in writing of withdrawal of the guarantee, signed by the parties hereto . . . has actually been given to Bank, and then only as to . . . transactions subsequent to the time of such notice.

The quoted language places the burden squarely upon Candelario to terminate the guaranty if and when she chooses. Thus, by its own terms, the guaranty is not of unlimited duration. However, Candelario relies upon our decision in *Pascoe Steel Corp.* v. *Shannon*, 224 Va. 530, 298 S.E.2d 97 (1982), for the proposition that even where a guarantor has the power to terminate a guaranty at any time, the guaranty is nevertheless subject to court review to determine whether its duration is reasonable.

In *Pascoe Steel*, as in the instant appeal, the guaranty was terminable upon the written notice of the guarantor; the specific language was as follows:

This shall be a continuing guaranty and shall cover all liabilities of Builder, both joint and several, incurred up to such time as Pascoe is given written notice by the undersigned to make no further advances on the security of this guaranty.

*Id.* at 533, 298 S.E.2d at 98. The guarantor failed to give Pascoe the necessary written notice. The trial court held the guaranty unenforceable; we reversed.

In the course of deciding *Pascoe Steel*, we wrote as follows:

We have consistently held that a guaranty, unlimited as to time, but given in circumstances evidencing the guarantor's intent to cover a series of transactions, will be construed as a continuing one. *The time of its duration and the amount to be covered must be reasonable in light of the circumstances of each particular case.*

*Id.* at 534, 298 S.E.2d at 99 (emphasis added) (citations omitted). Candelario seizes upon the emphasized language in an effort to secure relief from the terms to which she agreed. The Bank submits, however, that there is not and has never been a "reasonable time" limitation on the duration of a continuing guaranty where the parties have agreed that the guaranty will remain in effect until such time as the guarantor withdraws it or revokes it in writ-

ing. The Bank also submits, in a related argument, that where the parties have provided a method of termination or revocation, courts need not engage in an exercise concerning reasonableness of duration because the parties have by their agreement decided what is reasonable.

We agree with the Bank. The language used in *Pascoe Steel* was based on our decisions in *Looney* v. *Belcher*, 169 Va. 160, 168-69, 192 S.E. 891, 894 (1937), and *Barrett* v. *Vaughan & Co.*, 163 Va. 811, 816, 178 S.E.2d 64, 65 (1935). But neither of those cases involved a guaranty which contained its own provision for the manner in which the guaranty could be terminated.

*Barrett* concerned the liability of an indorser of a note. It did not concern the question of the duration of a guaranty. The *Barrett* endorsement read as follows: "[w]e, the endorsers named below, waive presentment, protest, demand of payment and notice of non-payment and guarantee the payment of the within note at maturity, or any time thereafter, and agree that all the provisions therein shall apply to and bind us as though we were makers." 165 Va. at 814, 178 S.E. at 65. We held, based on the express terms of their indorsement, that the indorsers had assumed primary liability for the note. We focused upon the phrase "any time thereafter." Though we gave full effect to that phrase, we stated in passing that ordinarily we would limit the effect of such an expression to what is a reasonable time in light of the facts and circumstances. Despite that comment, however, we gave the indorsement the effect required by the language used therein.

In *Looney*, the guarantors, who were officials of a bank which did not want one of the bank's major depositors to withdraw his funds, gave their "bond securing and guaranteeing any loss which might accrue to [the depositor] on account" of his funds remaining in their bank. 169 Va. at 163, 192 S.E. at 892. The guaranty contained no language of limitation or any condition concerning the bond's duration. We held that the bond was enforceable almost fourteen years after it had been executed. In *Looney*, we made reference to a requirement that guaranties be reasonable in duration yet we did not decide the case on that basis. We were of opinion that if the guarantors had intended for the guaranty to be limited in time, they should have said so; we wrote as follows:

*The parties affected by the contract which we have considered could have inserted therein plain words of limitation*

*and condition, but they did not choose to do so.* We cannot, by construction and interpretation, import these words and effect a significance which they did not elect to consummate. In other words, the courts cannot make contracts for persons.

*Id.* at 174, 192 S.E. at 896 (emphasis added).

■ We agree with the Bank that under the facts of the present case there was no basis upon which the trial court could have applied a test to determine the reasonableness of the duration of the guaranty. In *Pascoe Steel*, as here, the guaranty was terminable upon written notice from the guarantors. In *Pascoe Steel*, as here, no such written notice had been given. Those facts alone were enough to decide the issue of the duration of the *Pascoe Steel* guaranty. We are persuaded, therefore, that the test of reasonableness referred to in *Pascoe Steel* has no application in a case of this kind. Here, the correct principle is the one expressed in *Looney*: Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed. We hold that the trial court could not properly have invalidated the guaranty on the basis that it remained in force for an unreasonable length of time.

■ We also reject Candelario's argument that — on the basis of *Pascoe Steel* — the guaranty was unreasonable because it did not contain any limitation on liability. The provision in the guaranty regarding the amount of the guarantor's liability reads as follows:

It is understood that although the amount of credit which may be extended to, and the amount of indebtedness or liability that may be incurred by, the Debtor is not limited, our liability hereunder shall not at any time exceed the sum of ˙
_____ Dollars ($_____), and interest thereon, and all expenses hereinabove referred to. (*If no amount is stated, this guarantee is unlimited in amount.*)

(Emphasis added.) Candelario did not fill in the blank to limit her liability to a certain amount. The language of the guaranty on the amount of the guarantor's liability is plain. It must be given effect according to its terms. We hold that there was no basis upon which the trial court could have concluded that the guaranty was invalid because it did not limit the amount of the guarantor's liability.

The next issue concerns whether there was consideration to support the guaranty. Candelario concedes that furnishing funds to a third person at the insistence of one who guarantees repayment of those funds is sufficient consideration to support a guaranty. However, Candelario argues that in order for a guaranty to be valid the funds furnished to the third party must be furnished "at the time of the execution of the guaranty" or else there is no consideration. Candelario argues further that because no funds were furnished at the time the guaranty was executed, the guaranty lapsed before the Bank renewed Vincent's note in April 1985. Candelario misunderstands the terms of the agreement she signed as well as the law of consideration as it applies to guaranties.

First of all, the guaranty on its face is not limited to loans made simultaneously with its execution. The guaranty is plainly aimed at future events. It begins by reciting, in essence, that its use is with regard to B. W. Vincent's "desires to obtain from time to time loans, discounts, credits and other pecuniary accommodations of and from" the Bank. It then states that the guarantor warrants "unto the Bank . . . the full and prompt payment at maturity . . . of all indebtedness, obligations and liabilities of Debtor to Bank *now existing or hereafter created or arising.*" (Emphasis added.) Further, by the terms of the guaranty, the Bank is empowered to "renew or extend the time of payment of any debts or liabilities guaranteed" thereunder.

The Bank argues that a continuing guaranty is an offer at the time it is executed and at that time no consideration is required. The Bank argues further that the guaranty becomes a contract when credit is extended to a debtor. At that point, the Bank submits, extension of credit is the consideration.

This Court resolved the consideration question in *Moore Lumber Corp.* v. *Walker*, 110 Va. 775, 67 S.E. 374 (1910). There, the owner of a lumber mill was refused a loan. He then secured the following letter which he brought to the bank: "Gentlemen: I did not get down to your office yesterday, but any arrangement Hockaday makes with you I will stand by him, and back him all the way through. Yours, C. W. Cake." *Id.* at 777, 67 S.E. at 375. The bank lent money to the lumberman, who defaulted. When the bank demanded payment from Cake, Cake claimed there was no consideration for the guaranty. We rejected the argument, holding that the extension of credit to the lumberman following receipt of the guaranty was sufficient consideration.

Likewise, in this appeal, funds were issued to Vincent following receipt of the guaranty. When we ruled in *Moore Lumber Corp.* that there was sufficient consideration to support the guaranty, we did not find it necessary to consider whether credit had been extended to the lumberman the instant the bank received the guaranty. 110 Va. at 779, 67 S.E. at 375. Such a test would render countless existing guaranties void from their inception. Such is not the law. To similar effect is *Looney*, 169 Va. 160, 167-68, 192 S.E. 893-94. We hold that there was no basis upon which the trial court could have found the guaranty invalid for lack of consideration.

In light of all the foregoing, we conclude that the trial court should not have granted Candelario's motion to dismiss the Bank's suit as to her. Further, because she failed to adduce any evidence in defense of the Bank's claims against her, we are of opinion that the record is sufficient for this Court to make a final disposition of the case. We hold, therefore, that the judgment in favor of Candelario will be reversed and that final judgment will be entered against her in favor of the Bank in the same amount and under the same terms as it was entered against Vincent.**

*Reversed and final judgment.*

---

** We have considered and rejected Candelario's contention that the Bank's appeal was procedurally barred. The Bank signed the final order "seen and objected to." It had presented its full case against Vincent and Candelario, making a prima facie case of liability against both. The Bank made clear throughout the proceedings that, in its view, Candelario had to be held in the suit as a defendant. The Bank objected to any means by which Candelario might be released from liability. Under the circumstances of this case, the Bank's objection on order was sufficient to bring the matter on to this Court for review.