COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia

**PUBLISHED**

CSE, INC.

v.        Record No. 1438-22-3

KIBBY WELDING, LLC AND
 TABITHA KIBBY

OPINION BY
JUDGE STUART A. RAPHAEL
JUNE 13, 2023

FROM THE CIRCUIT COURT OF AMHERST COUNTY
Michael T. Garrett, Judge

Monica T. Monday (Glenn W. Pulley; Amanda M. Morgan;
Andrew O. Gay; Gentry Locke, on briefs), for appellant.

John B. Simpson (MartinWren, P.C., on brief), for appellees.

The trial court here declined to enforce a personal guaranty signed by a construction

company's agent—the 22-year-old daughter of the company's owner.  The guaranty stated that it

was given to the creditor "to induce the granting of credit" to the company.  The trial court found

consideration lacking, reasoning that because the creditor did not know the guarantor's identity

or check her creditworthiness, it did not rely on the guaranty when extending credit to the

company.  But because the guaranty objectively reflected a bargained-for exchange, the trial

court erred in looking behind that recital to find consideration lacking based on the undisclosed

mental state of the creditor.  So we reverse the trial court's determination and remand this case

with directions to enter judgment against the guarantor.

BACKGROUND

As this case comes to us after a bench trial, we recite the facts in the light most favorable

to defendant-appellee Tabitha Kibby ("Tabitha"), who defeated the claim of the creditor below,

plaintiff-appellant CSE, Inc., that she was liable on a personal guaranty. *See, e.g.*, *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 324 (2020).

Kibby Welding, LLC ("Kibby") provides pipeline-welding and fabrication services. Kibby contracted with the Transcontinental Gas Pipeline to perform welding and related work on portions of the Transcoast Pipeline in Virginia. Kibby's owner is Louis Kibby. In 2018, his then 22-year-old daughter, Tabitha, worked as a sales manager in Kibby's field office in Troy, Virginia. Tabitha earned $12 to $14 an hour. She had studied business at Kirkland Community College in Michigan but did not graduate. Tabitha was responsible for certain billing and accounting services at Kibby. Tabitha testified that she had no authority to sign checks, pledge Kibby's credit, or sign contracts on behalf of Kibby.

But the trial court found—and Kibby and Tabitha do not dispute here—that Tabitha "held herself out as having the apparent authority to act on behalf of Kibby as the 'Sales Representative.'" Furthermore, "no Kibby official with the authority to speak" for the company had denied that Tabitha had both actual and apparent authority to act on Kibby's behalf.

Kibby's work on the Transcoast Pipeline depended on certain heavy equipment, including cranes and boom trucks, as well as skilled workers to operate the equipment. To that end, Kibby subcontracted with plaintiff-appellant CSE, Inc. In February 2018, CSE's crane division manager, David Ranson, and his co-worker, Ronnie Chewning, visited Kibby's local field office in Troy. Kibby's representative, Pedro Lopez, briefly introduced CSE's representatives to Louis and Tabitha Kibby. Ranson and Chewning then met with Lopez to discuss Kibby's needs. Ranson described CSE's hourly rates for the equipment and operators, and Lopez said that "the rates looked good."

Ranson told Lopez that CSE required Kibby to complete a credit application, but Ranson failed to mention that CSE also required a personal guaranty of credit. One of the CSE

representatives asked Tabitha for her email address and emailed the credit application to her. Tabitha filled out the application form, identifying Kibby's bank, federal identification number, and three business references. About two hours after receiving the form, Tabitha returned the completed application by email to CSE. Her signature block identified her as Kibby's "Sales Manager." Tabitha testified that she used that title "because it was just something cool, I guess."

Tabitha had signed the credit application on behalf of Kibby, although her signature is illegible and CSE did not know at the time which Kibby employee had signed it. In very small print—less than half the font size of the rest of the form—Tabitha executed the following promise, the last sentence of which contained a personal guaranty:

> If account is granted credit, be it understood that all purchases be due and payable net 30 days from the date of the invoice. Payments not received within 30 days of invoice date are subject to a service charge of 1.5% per month, and all collection costs, including, without limitation, all court costs and attorney's fees of 25% of the invoice amount. The undersigned official to induce the granting of credit to the above named firm, hereby personally guarantees the company's credit.
> SIGNED BY: _____

Kibby and Tabitha admitted during discovery that this was Tabitha's signature.

Tabitha testified that no one from CSE asked her to personally guarantee Kibby's credit. She denied understanding that she was applying for credit on behalf of Kibby. She admitted, however, that she would have read the form before signing it, and she had no trouble reading the fine print into the record at trial.

After CSE checked Kibby's credit through a third-party credit service, CSE's account manager reported, "Credit is okay although they don't have a lot [of] data in [the] system. I am going to say we will take the risk, but we need to keep a close eye on them and make sure they know our terms." CSE did not know who had signed the personal guaranty and did not run a credit-check on Tabitha.

CSE's representative, Tim Austin, testified that to do business with CSE, a customer must either pay for the services in advance or must complete a credit application and show sufficient credit. Ranson similarly testified that "we're on the hook—we're sending out a million dollar piece of equipment, we're performing services for somebody, we need to make sure that . . . their credit checks out."

When asked about the requirement for a personal guaranty, Austin testified that CSE requires the guaranty to grant credit, but it does not request information about or check the creditworthiness of the person signing the guaranty. Austin did not know who had signed the guaranty for Kibby, only that "it was a Kibby representative." He said that CSE approved Kibby's credit here based on Kibby's credit "alone."

From March through May 2018, CSE supplied various equipment and operators to Kibby, sending multiple invoices for three projects. Kibby paid the invoices for only the first project, however, leaving a balance due of $319,170.78. Kibby voiced no complaints about the timing or quality of CSE's services when the work was performed. Kibby subsequently explained that it could not pay the balance owed to CSE because Kibby ran out of funds when a different contractor failed to pay its debts to Kibby.

CSE sued Kibby for breach of contract (Count I) and Tabitha for breach of her guaranty (Count II).[1] After a two-day bench trial, the trial court found that Kibby breached its contract with CSE. The court entered judgment for CSE and against Kibby in the amount of $319,170.78, plus prejudgment interest of $315,174.58, attorney fees and costs of $79,792.70,

---

[1] CSE sued Kibby alone in an earlier lawsuit, in which CSE discovered that Tabitha was the Kibby employee who signed the guaranty. After CSE filed an amended complaint naming both Kibby and Tabitha as defendants, CSE nonsuited that action and refiled the complaint at issue here.

- 4 -

and post-judgment interest of 1.5% per month (18% per year).[2]  But the court found for Tabitha

on the guaranty claim.  In an accompanying letter opinion, the court explained that it found "no

reliance by CSE on the credit of Ms. Kibby as the 'guarantor' as CSE did not know the identity

of the person who signed the [guaranty]."  The court could "not find that the purported signature

of an unknown 'person as a guarantor' was the basis for extending the credit."

CSE noted a timely appeal of the court's ruling for Tabitha.  While Kibby is a party to

this appeal, Kibby does not challenge the breach-of-contract judgment against it.  The parties

advised us at oral argument that CSE's judgment against Kibby remains unsatisfied.

ANALYSIS

"When a trial court renders judgment after a bench trial, we cannot set aside that

judgment as contrary to the evidence 'unless it appears from the evidence that such judgment is

plainly wrong or without evidence to support it.'"  *Moncrieffe v. Deno*, 76 Va. App. 488, 496

(2023) (quoting Code § 8.01-680).  We "give the findings of fact made by a trial court that heard

the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a

jury verdict."  *Mintbrook Developers, LLC v. Groundscapes, LLC*, 76 Va. App. 279, 287 (2022)

(quoting *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006)).  But how to interpret a

contract presents a question of law that we review de novo.  *E.g.*, *Babcock & Wilcox Co. v.

Areva NP, Inc.*, 292 Va. 165, 178 & n.6 (2016).

A guaranty is "an independent contract, by which the guarantor undertakes, in writing,

upon a sufficient undertaking, to be answerable for the debt, or for the performance of some

duty, in case of the failure of some other person who is primarily liable to pay or perform."

*McDonald v. Nat'l Enters., Inc.*, 262 Va. 184, 189 (2001) (quoting *B.F. Goodrich Rubber Co.*,

---

[2] The trial court dismissed CSE's alternative claim for quantum meruit in Count III after
finding that Kibby was liable on CSE's express-contract claim in Count I.

*Inc. v. Fisch*, 141 Va. 261, 266 (1925)). To be enforceable, a guaranty "must be in writing and supported by an adequate consideration." *Patterson v. Shaver*, 165 Va. 298, 301 (1935).

The parties do not dispute that the guaranty here was in writing. But Tabitha contends that it was not supported by adequate consideration because CSE did not know at first that she was the person who signed it, and CSE never checked her creditworthiness. So CSE could not have relied on the guaranty when extending credit to Kibby.

The trial court found—and neither Tabitha nor Kibby disputes here—"that the submission of the Credit Application and the credit check run thereupon induced CSE to perform crane services for Kibby on credit (promise to pay basis)." We also accept the trial court's factual finding that CSE did not actually rely on Tabitha's personal guaranty when extending credit to Kibby.

But we find that the trial court erred as a matter of law in concluding that whether Kibby subjectively relied on the guaranty was relevant to whether the guaranty was supported by adequate consideration. Our Supreme Court has long held that extending credit to another party constitutes adequate consideration for a guaranty. *See Bank of Southside Va. v. Candelario*, 238 Va. 635, 641-42 (1989); *Looney v. Belcher*, 169 Va. 160, 166-68 (1937); *Richmond Eng'g & Mfg. Corp. v. Loth*, 135 Va. 110, 155-56 (1923); *Moore Lumber Corp. v. Walker*, 110 Va. 775, 779 (1910); *Moore v. Holt*, 51 Va. (10 Gratt.) 284, 295-96 (1853). These principles are consistent with the Restatement rule: "It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous." Restatement (Second) of Contracts § 71 cmt. e (1981). The Restatement identifies a guaranty like Tabitha's to illustrate this principle: "A promises B to guarantee payment of a bill of goods if B sells the goods to C. Selling the goods to C is consideration for A's promise." *Id.* illus. 14.

The enforceability of Tabitha's personal guaranty cannot be defeated by proof that CSE did not subjectively rely on the guaranty when it extended credit to Kibby. CSE's true motive in extending credit to Kibby is not relevant to whether the guaranty was supported by consideration. As the original Restatement of Contracts explained, "it is the intent of the parties *as manifested to one another*" that determines the validity of the consideration. Restatement of Contracts § 84 cmt. b (1932) (emphasis added). So "if such an intent is manifested, the motive or the cause is immaterial." *Id.*

The second Restatement reaffirmed the irrelevance of motive when determining if the consideration is adequate. *See* Restatement (Second) of Contracts § 81 ("Consideration as Motive or Inducing Cause"). "The fact that a promise does not of itself induce a performance or return promise does not prevent the performance or return promise from being consideration for the promise." *Id.* § 81(2).[3] In other words, the fact that Tabitha's guaranty did not itself induce CSE to extend credit to Kibby does not prevent CSE's extension of credit to Kibby "from being consideration for" Tabitha's guaranty. "[T]he law is concerned with the *external manifestation* rather than the *undisclosed mental state*: it is enough that one party manifests an intention to induce the other's response and to be induced by it and that the other responds in accordance with the inducement." *Id.* § 71 cmt. b (emphases added).

That principle resolves this case. Tabitha signed the credit application just below the statement, "The undersigned official to induce the granting of credit to the above named firm, hereby personally guarantees the company's credit." By signing her name to that promise, Tabitha manifested an intention to induce CSE to extend credit to Kibby. CSE then extended credit to Kibby, manifesting an intention to provide consideration in exchange for Tabitha's

---

[3] Likewise, "[t]he fact that what is bargained for does not itself induce the making of a promise does not prevent it from being consideration for the promise." Restatement (Second) of Contracts § 81(1).

promise.[4]  Because the external manifestation of the parties' actions shows a bargained-for exchange, Tabitha's guaranty is supported by adequate consideration.

We disagree with Tabitha that enforcing the guaranty would conflict with Virginia precedent permitting the use of parol evidence to show that a contract's recital about consideration is false.  Tabitha relies on *Burke v. Sweeley*, 177 Va. 47 (1941), where the Court said that "the modern and now almost uniform rule is that the recital in a deed of the receipt of consideration does not preclude parol evidence of its nonpayment." *Id.* at 55.  But the Court has qualified that principle in cases where the recited consideration is central to the agreement: "where the consideration stated is of the essence of the agreement and is a contractual term of the written contract, parol testimony is not admissible to vary it from that expressed." *Wood v. S. Shale Brick Corp.*, 173 Va. 364, 369 (1939).  Because the extension of credit to Kibby in exchange for the personal guaranty was the essence of the guaranty, parol evidence could not be used to "nullify [that] contractual consideration." *Id.* at 368.  So the trial court should not have looked behind the guaranty's stated consideration to impeach its sufficiency.

Applying *Wood* to the guaranty context aligns with the Restatement's treatment of guaranty agreements.  A guaranty "is binding if . . . the promise is in writing and signed by the promisor and *recites a purported consideration*."  Restatement (Second) of Contracts § 88(a) (emphasis added).  That focus on "purported" consideration is significant: it "precludes inquiry into the question whether the consideration recited in a written contract of guaranty was mere formality or pretense, or whether it was in fact given." *Id.* cmt. b.  "Difficult problems of

---

[4] The fact that credit was not given "simultaneously with [the guaranty's] execution" does not defeat the consideration. *Bank of Southside*, 238 Va. at 641.  Rather, "the extension of credit . . . following receipt of the guaranty [is] sufficient consideration." *Id.*

measurement of the extent of the reliance are thereby avoided, and the guarantor is left to his recourse against the principal obligor." *Id.* cmt. d.[5]

To adopt the contrary rule urged by Tabitha—that a guarantor may cancel his obligation by showing that the creditor did not actually rely on the guaranty—would fundamentally destabilize the objective reliability of a contract, which depends on the "external manifestation" of the parties' bargained-for exchange, not their "undisclosed mental state." Restatement (Second) of Contracts § 71 cmt. b. A creditor receiving a guaranty that is otherwise valid on its face would have to worry that the guaranty might be declared unenforceable if the creditor could not prove that he subjectively relied on it.

A few examples prove the point. Would a guaranty be unenforceable if the creditor forgot to check the guarantor's creditworthiness? What if the creditor performed only a deficient or half-hearted credit-check? Or what if the credit-check showed that the guarantor presented a bad-credit risk? Would the guaranty be unenforceable because the creditor should not have relied on it? We agree with CSE that adopting Tabitha's position would "open[] a pandora's box" of uncertainty in Virginia contract law.

We are not persuaded by Tabitha's fallback argument that her guaranty was unenforceable because she did not fill in the blank on the credit application next to the phrase "Maximum Credit Applied For."[6] Like the guarantor in *Bank of Southside*, Tabitha simply "did not fill in the blank to limit her liability to a certain amount." 238 Va. at 640. Forgoing a cap on her "[m]aximum" liability, however, did not render the guaranty void or unenforceable. As in

---

[5] The American Law Institute repeated this rule in § 9(2)(b) of the Restatement (Third) of Suretyship and Guaranty (1996). *See id.* Reporter's Note ("Clauses (b)-(d) are based on Restatement, Second, Contracts §§ 88(a)-88(c).").

[6] Although the trial court did not rely on this argument, we may consider it under the right-for-the-wrong-reason doctrine. *E.g.*, *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 542 (2016); *Focke v. Commonwealth*, 77 Va. App. 366, 374 n.3 (2023).

*Bank of Southside*, "there was no basis upon which the trial court could have concluded that the guaranty was invalid because it did not limit the amount of the guarantor's liability." *Id.*[7]

In short, the trial court should have found Tabitha liable on the guaranty of Kibby's debt to CSE (including post-judgment interest and the 25% contractual attorney-fee award specified by the credit application). We remand this case for the trial court to enter judgment for CSE and against Tabitha on the guaranty. As CSE acknowledged at oral argument, the amount of the judgment against Tabitha should be reduced by any amounts that CSE has recovered on its judgment against Kibby.[8]

Whether to include prejudgment interest in the judgment against Tabitha remains an open question. The trial court did not address whether Tabitha should pay prejudgment interest if she

---

[7] We appreciate that it may seem harsh to hold Tabitha personally liable for the debts of her father's company. She was only 22 years old when she signed the guaranty, had not graduated from college, and was unsophisticated in commercial matters. But absent a meritorious defense, "'[c]ourts cannot relieve one of the consequences of a contract merely because it was unwise' . . . [or] 'rewrite a contract simply because the contract may appear to reach an unfair result.'" *Pelfrey v. Pelfrey*, 25 Va. App. 239, 245 (1997) (second and third alterations in original) (quoting *Rogers v. Yourshaw*, 18 Va. App. 816, 823 (1994)). "In any action on a contract, the defendant may file a pleading, alleging any matter arising out of the transaction which would entitle him to relief in equity or at law . . . ." Code § 8.01-422. Tabitha, however, did not assert "unconscionability" or "unreasonableness of the transaction" as an affirmative defense. *See Wood v. Martin*, 299 Va. 238, 249 n.6 (2020); Kent Sinclair, *Sinclair on Virginia Remedies* §§ 43-6, 43-7 (5th ed. 2016). And the record is insufficient to determine whether the guaranty provision here was commercially reasonable in the heavy-construction trade. *Cf.* Code § 8.2-302(2) (permitting parties to present evidence of "commercial setting, purpose and effect to aid the court" in determining whether a contract for the sale of goods is unconscionable).

[8] The "one satisfaction" rule limits CSE's ultimate recovery to the outstanding amount owed by Kibby to CSE. *See Miller v. Byers*, 99 Va. 163, 165-66 (1901) ("A creditor having . . . two sets of obligors bound for his debt may proceed against both at the same time, although he is entitled to but one satisfaction." (citing *Asberry's Adm'r v. Asberry's Adm'r*, 74 Va. (33 Gratt.) 463, 471 (1880))); *Winston v. Whitlocke*, 9 Va. (5 Call) 435, 436 (1805) (Tucker, J.) ("Upon a joint and several bond, the plaintiff may proceed to take his judgment against the obligors severally; but he can have but one satisfaction."); *accord Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 270 (2019) ("A fundamental principle of damages is that a plaintiff may not receive a double recovery for a single injury. This is because the essential purpose of both tort and contract damages is compensation." (citations omitted)).

were liable on the guaranty. While the award of post-judgment interest is mandatory, the trier of fact has the discretion to award prejudgment interest and to choose the date from which it should run. *See* Code § 8.01-382; *Moncrieffe*, 76 Va. App. at 506-07.[9] Given that CSE did not discover Tabitha's identity or make a demand on the guaranty until 2020, we cannot intuit whether the trial court would have assessed prejudgment interest against Tabitha and, if so, the start-date it would have used. *See Moncrieffe*, 76 Va. App. at 507 (finding no abuse of discretion where the trial court awarded prejudgment interest and "chose a rational start-date"). We leave those questions for the trial court to answer on remand.

## CONCLUSION

The trial court erred as a matter of law in finding Tabitha's guaranty to be unenforceable and in failing to enter judgment on the guaranty in favor of CSE. We reverse the judgment below and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded*.

---

[9] Code § 6.2-302(B) provides that "the court shall apply the judgment rate of six percent to calculate prejudgment interest pursuant to § 8.01-382 and to calculate post-judgment interest," unless "the contract or other instrument" specifies the interest rate. Neither Kibby nor Tabitha has disputed that the 1.5% per month "service charge" specified in the credit application—which CSE treats as 18% per year—supplies the correct interest rate for prejudgment and post-judgment interest.