Jeffrey THOMPSON, Plaintiff,

v.

DIRECT IMPACT COMPANY,
Defendant.

No. Civ.A. 97–1250–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 14, 1998.

Gregory Lynn Murphy, Vorys, Sater, Seymour and Pease LLP, Alexandria, VA, for plaintiff.

Bernard Joseph DiMuro, DiMuro, Ginsberg & Lieberman, Alexandria, VA, Michael Earl Barnsback, DiMuro, Ginsberg & Lieberman, P.C., Alexandria, VA, for defendant.

## ORDER

DOUMAR, District Judge.

Presently before the Court is defendant's renewed motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, motion for a new trial under Rule 59(a)of the Federal Rules of Civil Procedure, and motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. For the reasons set forth below, these motions are DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Jeffrey Thompson, claimed that the defendant, Direct Impact Company ("the Company"), orally modified an Employment Agreement between Thompson and the Company. The alleged modification would have changed Thompson's commission on contracts that he secured for the Company from 20% of the gross margin or gross profit to 25% of the gross margin or gross profit.

The issue of whether there was a breach of the Employment Agreement with regard to the 1997 Tenneco contract also arose during trial. Immediately after securing the Tenneco contract, Thompson was informed that he was discharged. Thompson clearly assisted in securing the Tenneco contract for the Company before he was fired by the Company. Moreover, the principals of the Company specifically desired that Thompson participate in ob-

taining this contract with the knowledge that the Company would fire Thompson immediately thereafter. However, Thompson did not receive commissions for his work on the Tenneco contract because the Company stated that Thompson was not entitled to commissions unless the Company had "collected" revenues from Tenneco at the time of Thompson's termination. The Company does not contend that it did not ultimately receive the money from Tenneco because it did. What they contend is that a salesman under contract could sell the product, yet once sold, the Company could fire him before the funds from the sale were received and avoid paying the salesman his commission. At trial, a jury found by its verdict that Thompson failed to prove by clear and convincing evidence that there was an oral modification of the Employment Agreement increasing the percentage of his commission rate, but that Thompson did prove by a preponderance of the evidence that the Company breached the Employment Agreement by failing to compensate him for the Tenneco contract. The jury awarded compensatory damages in the amount of 20% of the gross margin on the Tenneco contract. This Court then entered judgment based on the jury's verdict and granted summary judgment to Thompson in the amount of $60,000.

On May 6, 1998, the Company timely filed a renewed motion for judgment as a matter of law, a motion for new trial, and a motion to alter or amend the judgment. Fed.R.Civ.P. 50(b), 59(a), and 59(e). On May 19, 1998, Thompson filed a brief in opposition to these motions.

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR A NEW TRIAL, AND MOTION TO ALTER OR AMEND THE JUDGMENT

### I. Standard of Review

#### A. Motion for Judgment as a Matter of Law

The Company has renewed its motion for judgment as a matter of law, initially made at the close of all of the evidence at trial. The issue is whether there was a legally sufficient basis for a reasonable jury to find for the plaintiff on the issues contested. *See* Fed.R.Civ.P. 50(a). This motion can only be granted "if, viewing the evidence most favorable to the non-moving party and drawing every legitimate inference in that party's favor, [it is determined that] the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.,* 87 F.3d 654, 656–57 (4th Cir.1996) (citations omitted). A renewed motion for judgment as a matter of law is not an occasion for the Court to usurp the jury's authority to weigh the evidence and gauge the credibility of witnesses. *Taylor v. Home Insurance Company,* 777 F.2d 849, 854 (4th Cir.1985). In short, the defendant bears a "heavy burden" in establishing that the evidence is insufficient to uphold the jury's verdict. *Price v. City of Charlotte,* 93 F.3d 1241, 1249 (4th Cir.1996) quoting *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.,* 41 F.3d 182, 186–87 (4th Cir.1994).

#### B. Motion for a New Trial

Under Rule 50(b), a motion for a new trial under Rule 59 may be joined with a renewed motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50(b). The Rule 59 standards are well established in the Fourth Circuit:

On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that [1] the verdict is against the clear weight of the evidence, or [2] is based upon evidence which is false, or [3] will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

*Atlas Food Systems and Serv. v. Crane Nat. Vendors,* 99 F.3d 587, 594 (4th Cir. 1996). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that

substantial justice has not been done . . ." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d § 2803* (1995). "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61.

C. Motion to Alter or Amend the Judgment

▇▇▇ Rule 59(e) provides a mechanism for an aggrieved party to petition the Court to alter or amend a judgment under certain limited circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997). "Because of the interests in finality and conservation of judicial resources, Rule 59(e) motions should be granted sparingly." *Rouse v. Nielsen,* 851 F.Supp. 717, 734 (D.S.C.1994). Thus, a Rule 59(e) motion is not a vehicle for obtaining post judgment reargument on issues already decided. *Durkin v. Taylor,* 444 F.Supp. 879, 889–90 (E.D.Va.1977); *see also Keyes v. National R.R. Passenger Corp.,* 766 F.Supp. 277, 280 (E.D.Pa.1991) (Rule 59(e) motions "are not at the disposal of an unsuccessful party to 'rehash' the same arguments and facts previously presented"); 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1, at 127–28 (2d ed. 1995) ("The Rule 59(e) motion may not be used to relitigate old matters").

## II. Analysis

A. Breach of the Employment Agreement Regarding the Tenneco Contract

The Company contends that the question of whether it breached the Employ-ment Agreement by failing to pay Thompson's commissions related to the 1997 Tenneco contract should never have gone to the jury. The Company argues that because the Employment Agreement was plain and unambiguous on its face, the Court was not at liberty to search for its meaning beyond the instrument itself. *See Globe Iron Const. Co. v. First Nat. Bank of Boston,* 205 Va. 841, 140 S.E.2d 629, 633 (1965). As a result, the company states that it is entitled to judgment as a matter of law or alternatively, that the Court should amend the judgment to correct a clear error of law or prevent manifest injustice. In viewing the evidence in the light most favorable to Thompson, the Company does not meet its "heavy burden" of establishing that the evidence is insufficient to uphold the jury's verdict.

▇▇▇ The Company's argument is based on the premise that Thompson may not recover any commissions unless the Company had "collected" revenues from Tenneco at the time of Thompson's termination, that the phrase "collected" as used in the Employment Agreement was unambiguous, and that there was no evidence that the Company had "collected" any revenue from Tenneco pursuant to the relevant contract at the time of Thompson's termination. However, this Court concluded during trial that the term "collected" is ambiguous. While the word "collect" can mean "to claim as due and receive payment for" *see Webster's Ninth Collegiate Dictionary,* it can also mean "to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." *See Black's Law Dictionary* (6th ed.1990) at 263. The word "liquidated" also has several meanings, such as "ascertained; determined; fixed, settled, made clear or manifest . . . declared by the parties as to amount . . . made certain or fixed by agreement of the parties or by operation of law." *Id.* at 930. "Liquidated debt" has the following definition: "a debt is liquidated when it is certain what is due

and how much is due." *Id.* Thus, the phrase "collected" has several meanings and in this context and case would have the meaning the parties placed upon it.

Under the definitions listed *supra,* Thompson was entitled to commissions on the relevant Tenneco contract if, at the time of his termination, the amount of "gross profit" from the contract was "ascertained", "determined", "fixed", or "settled". The Company's president, John Brady, testified at trial that the Company's accounting is on an "accrual" basis rather than a "cash" basis. This means that the Company considered the revenue from the Tenneco contract to be received when the contract with Tenneco was entered into. Obviously, the expense connected therewith must be ascertained to determine "profit". Because commissions constitute an expense, then under the accrual method of accounting utilized by the defendant, Thompson's commission would necessarily be determinable at the inception of the contract.

■ Brady also testified that at the inception of the Tenneco contract, he knew and could budget the costs associated with the Tenneco contract in addition to determining commissions. From this testimony and the various meanings of the word "collect", the jury has reasonably concluded that the "gross margin" on the Tenneco contract was "ascertained", "fixed", or "settled" at the time the Tenneco contract was entered into, which was prior to Thompson's termination and therefore award damages based on the Tenneco contract.[1]

### B. Evidence Establishing Damages Related to Tenneco Contract

The Company next argues that this Court should award judgment as a matter of law or in the alternative alter or amend the jury's judgment because the evidence produced by Thompson to establish damages related to his Tenneco commissions were insufficient because it was "speculative" and based on inadmissable hearsay.

■ Thompson does bear the burden of proving his damages with reasonable certainty. *See Murray v. Hadid,* 238 Va. 722, 385 S.E.2d 898 (1989). However, proof of damages need not be "absolute." *See Medcom, Inc. v. C. Arthur Weaver Co.,* 232 Va. 80, 348 S.E.2d 243, 248 (1986).

■ To calculate the "collected gross profit" on the Tenneco contract from which Thompson's commission was derived, the Court needed to determine the total costs of performing the contract and the total revenues on the contract. During his testimony regarding the costs associated with the Tenneco contract, Thompson did state that he could "speculate on [expenses] based on what we had spent years before." However, this Court replied "I didn't ask you to speculate. Can you tell me what you spent [in previous] years ..." Thompson then provided a cost figure based on his experience during prior years. Thompson thus provided a reasonable basis to determine costs based on his work with the Company and not speculation.

■ In addition, the $500,000 revenue figure provided by Thompson was not based on inadmissable hearsay. Brady, the Company's president and 50% shareholder, discussed this figure with Thompson. Pursuant to Rule 801(d)(2) of the Federal Rules of Evidence, Brady's statement to Thompson qualifies as an admis-

---

1. With regard to the Company's alternative motion to amend the judgment on this issue, the Company made this argument previously on two different occasions: once before the case went to the jury and again after the Court entered judgment on the jury's verdict. Because a motion to alter or amend the judgment under Rule 59(e) is not a vehicle for an unsatisfied party to rehash arguments previously presented, the motion is improper. Even if this argument was properly before the Court, however, the reasons stated *supra* for denying the motion for judgment as a matter of law with regard to this issue apply equally well to the motion to amend.

sion by a party opponent and therefore is not hearsay. Fed.R.Evid. 801(d)(2). Thus, viewing every legitimate inference in Thompson's favor, the undisputed evidence formed a sufficient basis for the jury to calculate damages with reasonable certainty.

### C. Court's Award of Summary Judgment in the Amount of $60,000 on the Tenneco Contract

The Company also argues that the Court improperly entered summary judgment for Thompson in the amount of $60,000, and that the Court should amend the judgment and find for the Company or in the alternative, order a new trial on the issue of liability and damages. This issue was already raised unsuccessfully at trial and therefore is not a proper subject for a motion to alter or amend. *Durkin*, 444 F.Supp. at 889–90. However, even if the issue was properly raised in a motion to alter or amend and with regard to the alternative motion for a new trial, the Company's claim is without merit.

■ The Company specifically contends that the jury's verdict for 20% of the gross margin on the Tenneco contract constituted a no damages or nominal damages verdict, and the Court's summary judgment award of $60,000 represents an improper additur. However, the Company mischaracterizes the jury's verdict in that a verdict for "20% of the gross margin" is neither zero, "$1.00" nor any other "nominal figure". Instead of usurping the jury's role in determining damages, the Court simply calculated the dollar value of the damages based on the formula provided by the jury and the undisputed testimony about revenues and costs. Based on Thompson's undisputed testimony that the total cost of performing the contract would be between 30 to 40% of the total revenue,[2] the Court used the higher cost figure, 40%, and calculated 40% of $500,000, the total revenue from the Tenneco contract based on Brady's statements. The Court then subtracted $200,000 (40% of $500,000) from the $500,000 revenue figure and determined that the gross margin or gross profit on the contract after accounting for costs would have been $300,000. This was the very minimum based on the undisputed testimony. In reaching the dollar amount of Thompson's commission, the Court then took 20% of the gross margin or gross profit, the formula arrived at by the jury, to reach the $60,000 commission figure (20% of $300,000). Therefore, the Court properly awarded summary judgment in the amount of $60,000 on the Tenneco contract based on the jury verdict.

### D. Court's Charge to the Jury

Finally, the Company argues that the Court's charge to the jury was biased against the Company and that the "missing witness" instruction was improper. The Company seeks relief by renewing its motion for a mistrial and moving for a new trial.

Specifically, the Company finds the following comments by the Court objectionable: 1) the Court's comments regarding the fact that there was no testimony from the Company's accountant or an outside accountant; 2) the Court's comments regarding Brady's testimony relating to the interpretation of the Employment Agreement; and 3) the Court's comments regarding Thompson's testimony as to the

2. The Company incorrectly states that the "30–40%" figure provided by Thompson was 30–40% of the gross margin on past contracts. The 30–40% figure that Thompson spoke of during his testimony was a cost figure; in other words, the costs associated with past contracts were usually between 30–40% of the total revenue. When the Court utilized the 40% figure, it utilized the more conservative figure in regard to calculating Thompson's commission. Had the Court utilized the 30% figure, Thompson's commission would have been $70,000 (30% of $500,000 = $150,000. $500,000 − $150,000 = $350,000. 20% of $350,000 = $70,000). The indications in the brief of the defendant is an attempt to mince the language of the Court and witnesses during the trial or to change what was clearly everyone's understanding at the time, including counsel for all parties.

amount of revenue and gross margin on the 1997 Tenneco contract.

■ The Company acknowledges that it is proper for the Court to comment on the evidence at trial during its charge. *See Virginian Ry. Co. v. Armentrout*, 166 F.2d 400, 405 (4th Cir.1948) ("It was proper, of course, for the judge to array the evidence and comment upon it ... [the judge] should not hesitate to exercise the power of comment to clear away false issues and lead the jury into a proper understanding of the facts"). This is precisely what the Court did.

In addition, the Court instructed the jury that these comments were not evidence. This Court told the jury "[r]emember at all times that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts ... [A]ny comments I may make on the facts you can ignore." Trial Transcript at 7. The Court also told the jury that in the "final analysis, it is your recollection and interpretation of the evidence that control in the case." *Id.*

Furthermore, after instructing the jury that its comments were not evidence, that the jury could ignore the Court's comments, and that the jury was the sole judge of the evidence, this Court identified when it was making "comments" which could be ignored. *Id.* at 14 ("Now I want to make a few comments on the evidence"); at 15 (commenting upon Brady's testimony and stating "you may recall differently—and this is a comment of mine again—"); at 16 (commenting on the absence of accountant testimony and telling the jury, "I point these factors out to you but you may have heard the evidence differently. If you remember differently, then it's your memory. Remember, these comments of mine on the evidence can be entirely disregarded"); at 17 ("Whatever I say and comment on the evidence is not evidence. You will recall the evidence ...

This is a comment of mine ... It's up to you to determine.")

The jury's verdict on Thompson's claim that there was an oral modification of the Employment Agreement with regard to the commission rate to which Thompson was entitled illustrates that the Court's charge was not prejudicial and that the jury understood that the Court's comments were not evidence and could be ignored. The Court commented on Thompson's testimony by stating "I only can tell you that the evidence started in 1995 when [Thompson] first had conversations about this. He claims he was assured this all through 1996, and he claims that there was a handshake on it." *Id.* at 17.

The jury demonstrated that it understood that the Court's instructions and its comments which were favorable to Thompson were not evidence by returning a verdict in favor of the Company on this claim. The jury understood its role and knew it could ignore the Court's comments. Thus, the Court's comments on the evidence were not prejudicial.

■ The Company also takes issue with the Court's "missing witness" instruction related to the failure of the Company to call its accountant in order to rebut Thompson's undisputed evidence regarding damages.[3] The Company complains that the instruction was improper because it was not requested by either party and was prejudicial. However, the Company does not cite and the Court is unaware of authority for the contention that the Court may only give instructions requested by a party. In addition, the difference between the "missing witness" instruction given by the Court and the "standard" missing witness instruction that the Company argues that the Court should have given is negligible. *Compare* Trial Transcript at 15 ("You may assume that if the party has

---

**3.** The Company did call its accountant to the stand just before a recess. However, after the accountant took the stand, the Court decided

to take a recess before she gave any testimony. After the recess, the Company did not call her back to the stand.

process or the ability to produce evidence and does not produce it, then that evidence would not be helpful to the party that fails to produce it") *with Virginia Civil Jury Instruction No. 2.080* ("If you believe that a party, without explanation, failed to call an available witness who has knowledge of necessary and material facts, you may presume that, if called, the witness' testimony would have been unfavorable to the party who failed to call him"). Therefore, the Company's claim of bias with regard to the jury charge is unwarranted and the Company has failed to show that not granting a new trial will result in "miscarriage of justice."

## CONCLUSION

For the reasons stated, the defendant's renewed motion for judgment as a matter of law is DENIED, the defendant's motion for a new trial is DENIED, and the defendant's motion to alter or amend the judgment is DENIED.

The Clerk of the Court is REQUESTED to mail a copy of this Order to all counsel of record. IT IS SO ORDERED.