**TIDEWATER FINANCE COMPANY, INC., Plaintiff,**

v.

**FISERV SOLUTIONS, INC., Defendant.**

**Civil Action Nos. 2:99CV696, 2:99CV697.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 20, 2000.

Thomas Brian Kelly, J. Gray Lawrence, Jr., Faggert & Frieden, P.C., Chesapeake, VA, for plaintiffs.

Larisa Rosenstein White, Thomas Edward Spahn, Robert William McFarland, Laura R. White, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendant.

## *MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

This matter comes before the Court on Plaintiff's motion for a new trial pursuant to Federal Rule of Civil Procedure 59, and on Plaintiff's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. For the reasons stated below, the Court **DENIES** Plaintiff's motion for a new trial and **DENIES** Plaintiff's motion for judgment as a matter of law.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Tidewater Finance Company ("Tidewater") is a sub-prime finance company in the business of financing retail purchases, made primarily through furniture and automobile dealers, for people with poor credit. Defendant Fiserv Solutions, Inc. ("Fiserv") is in the business of designing and selling information processing software systems. In September 1996, after several months of negotiation, the parties entered into a five-year contract ("Contract")[1] in which Defendant agreed to provide computer information processing software and services to Plaintiff.[2] From the outset, the parties' relationship was fraught with difficulty. Tidewater was dissatisfied with the quality of services provided by Fiserv. Fiserv, in turn, was unhappy with Tidewater for making what they perceived as unreasonable demands and for repeatedly changing their requirements. After several unsuccessful attempts to resolve the problems, Tidewater terminated the Contract in February of 1999, with three years remaining in the original Contract term. Plaintiff subsequently brought suit against Fiserv, alleging fraudulent inducement and breach of contract for failure to perform services as promised, and seeking a declaratory judgment finding that Fiserv had agreed to let Tidewater out of its contract without penalty. Fiserv counterclaimed for breach of contract and conversion, claiming that Tidewater had breached the Contract by terminating it prematurely and had unlawfully retained Fiserv's software and materials.

A jury trial was conducted from January 20, 2000, through February 1, 2000. On January 28, 2000, at the close of Plaintiff's evidence and pursuant to Defendant's motion, the Court granted judgment as a matter of law in favor of the Defendant on Plaintiff's fraudulent inducement claim and Defendant's conversion counterclaim. On January 31, 2000, at the close of Defendant's case, the Court heard motions for judgment as a matter of law from both parties and denied both parties' motions in an oral ruling from the bench. The jury commenced its deliberations on February 1, 2000, and returned with its verdict later that day. The jury found in favor of the Defendant on all remaining counts and awarded Defendant $536,250.60. Plaintiff renewed its motion for judgment as a matter of law and the Court denied the motion.

On February 10, 2000, Plaintiff filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b) and a motion pursuant to Rule 59 for a new trial. The matter has been fully briefed, and the Court held a hearing on April 4, 2000. The Court denied Plaintiff's motion for a new trial from the bench and reserved its right to supplement its oral ruling with a written opinion, which it does below. The Court took Plaintiff's motion for judgment as a matter of law under advisement, and now **DENIES** that motion.

## II. DISCUSSION

### A. Plaintiff's Motion for a New Trial

Plaintiff alleges that it is entitled to a new trial based on the alleged misconduct of one of the trial jurors at voir dire. According to Plaintiff, after the jury rendered its verdict in favor of Defendant Fiserv on all claims, Tidewater's CEO, Nathan Benson, conducted an extensive review of Tidewater's files. That review revealed that one of the trial jurors had applied for and been denied credit by Tidewater in October 1998. After conducting further research, Plaintiff found that the same juror and his wife had filed for bankruptcy in July 1999. Furthermore, the juror's wife had apparently purchased furniture on credit through Home Furnishings, the credit arm of Haynes Furniture.[3] Plain-

---

1. The contract consisted of an information processing agreement and three software licenses. Only the information processing agreement is at issue here. Accordingly, the Court will refer to the information processing agreement as the "Contract."

2. Tidewater originally contracted with Florida Informanagement Services ("FIS"), which was acquired by Fiserv 1997. Throughout the course of the trial, both parties referred to FIS and Fiserv interchangeably.

3. Plaintiff attached copies of the 1998 credit reports, obtained from its business files, of both the

tiff argues that the juror's failure to reveal this information by neglecting to respond to several of the Court's questions during voir dire constitutes juror misconduct entitling it to a new trial.

During voir dire, the Court asked the following questions:

• "Has any member of the panel ever had any business dealings with Tidewater Finance Company, Tidewater Credit Services, Tidewater Motor Credit, or L. Sandler & Sons, Inc.?"

• "Have you or any immediate member of your family—sister, brother, mother, father, spouse—had any dealings with these parties—with these companies?"

• "Has any member of this panel ever purchased furniture using financing through the furniture store rather than a bank or a credit card company?"

• "Has any member of the panel ever been involved in any type of litigation involving the nonpayment of a debt?"

The juror failed to respond affirmatively to any of these questions. However, the juror did respond affirmatively to the Court's question regarding whether "any member of this panel [had] ever been contacted by a debt collector." Furthermore, he never gave any indication, despite several questions by the Court, that he was biased against finance companies or that he was unable or unwilling to render a fair and impartial verdict.

Plaintiff Tidewater alleges that because it is a sub-prime finance company, it anticipated that part of Defendant's trial strategy would be to characterize Tidewater as a company that preys on people with poor credit. For this reason, Plaintiff claims that it was essential for Tidewater to select jurors without a personal history that might suggest prejudice against finance companies. It alleges that the juror's failure to reveal the information concerning his own credit history

and his involvement in bankruptcy proceedings impaired Plaintiff's right to exercise intelligently its peremptory strikes or to challenge for cause. On this basis, Plaintiff claims that it is entitled to a new trial.

### 1. Legal Standard

 Federal Rule of Civil Procedure 59 provides that "[a] new trial may be granted ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." To obtain a new trial based on a juror's failure to disclose information at voir dire, the party seeking a new trial

> must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equip. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (plurality opinion); *see also Fitzgerald v. Greene,* 150 F.3d 357, 362 (4th Cir.1998) (stating that Fourth Circuit applies *McDonough* two-part test in cases alleging juror dishonesty during voir dire). The grant or denial of a new trial lies in the trial court's discretion. *See McDonough,* 464 U.S. at 556, 104 S.Ct. 845.

### 2. Discussion

#### a) *Plaintiff's Failure to Reveal the Alleged Juror Misconduct Until After Trial*

 Plaintiff claims that it waited until after the trial was completed to review its files because it did not have time prior to trial to determine whether any of the panel members had ever applied to Tidewater for credit.[4] It further states that it was not until Nathan Benson heard the jury's verdict that

---

juror and his wife to its motion for a new trial. The Court placed under seal Plaintiff's motion, the credit reports, and all related filings by Order filed February 24, 2000. The Court does not address whether this ill-advised and unauthorized use of the juror's and his wife's credit reports violated their rights under the Fair Credit

Reporting Act, 15 U.S.C. §§ 1681–1681u, or any other provision of law.

**4.** At the hearing, Nathan Benson testified that he waited until after the trial because he did not think of doing it sooner.

"his suspicions were raised" and he ordered a review of Tidewater's files. However, Plaintiff does not dispute that the information regarding the juror's credit history and alleged past dealings with Tidewater was readily available to it at all times during the course of the trial, and that the jury list was available to it several days before trial.

■■■ A party is barred from making post-trial challenges to the composition of a jury based on information it knew at the time of voir dire. *See McDonough,* 464 U.S. at 551 n. 2, 104 S.Ct. 845. Furthermore, a party waives its right to challenge a juror by failure to object at the time the jury is empaneled "if the basis for objection might have been discovered during voir dire." *Robinson v. Monsanto Co.,* 758 F.2d 331, 335 (8th Cir.1985). Accordingly, the United States Court of Appeals for the Fourth Circuit has held that a party cannot raise the failure of a juror to truthfully answer a question during voir dire when the truthful answer could have been ascertained prior to voir dire. *See City of Richmond v. Madison Management Group, Inc.,* 918 F.2d 438, 459 (4th Cir.1990) ("If the right to challenge a juror is waived by failure to object at the time the jury is empaneled if the basis for objection might have been discovered during voir dire ...; such a right surely is waived if the basis could have been discovered before voir dire.").

In *Madison Management,* the defendant moved for a new trial because a juror had failed to respond to the district court's question asking whether any member of the panel was a city of Richmond water customer, although the juror was in fact such a customer. The Fourth Circuit affirmed the district court's denial of the defendants' request for a new trial, noting that the defendants were given a list of the jurors' addresses before trial and thus they could have discovered the information. *See id.* Similarly, in an unpublished case, the Fourth Circuit affirmed a district court's dismissal of a defendant's post-trial challenge to a juror's responses to

voir dire questions, noting that the defendant could have discovered the information with due diligence because it was a matter of public record at the time of trial. *See United States v. LaRouche,* 4 F.3d 987, 1993 WL 358525, at *4 (4th Cir.1993) (unpublished).

Plaintiff here could have reviewed its files at any time to determine whether any of the jurors had a connection to Tidewater or was otherwise unqualified to serve on the jury. However, it declined to do so only because it did not have the time. Accordingly, the Court finds that Plaintiff has waived its ability to now object to the jury's composition. For the Court to invalidate an entire seven-day trial based on information that the Plaintiff could have easily discovered before trial or during trial would constitute an enormous waste of judicial resources. Moreover, it would allow Plaintiff to benefit from withholding information, by postponing a review of its files, that was in its sole possession throughout the course of the trial.

### b) *Plaintiff's Burden to Show Entitlement to a New Trial*

#### (1) *Juror Dishonesty*

■■ Even assuming Plaintiff had not waived its right to object to the juror's lack of disclosure during voir dire, Plaintiff faces a stiff burden to prove that it is entitled to a new trial. Under *McDonough,* the Plaintiff must first show that the juror answered a voir dire question dishonestly.[5] A mistaken, but honest, response to a question is insufficient to satisfy this requirement and does not warrant granting a new trial. *See McDonough,* 464 U.S. at 549–50, 104 S.Ct. 845.

■■ While Tidewater claims that the juror applied for and was denied credit by Tidewater in 1998, it does not state the circumstances under which the juror applied for credit. Nathan Benson testified that the juror had applied to Tidewater Motor Credit through an automobile dealership, and that the dealership uses a standard credit applica-

5. However, while several circuits have ruled that dishonesty is a threshold requirement under *McDonough,* other circuits read *McDonough* to incorporate its concurring opinions and conclude that juror dishonesty is not necessary, but is only a factor to be considered in determining whether there was actual bias. The Fourth Circuit has not specifically addressed this issue. *See Fitzgerald,* 150 F.3d at 364 n. 3.

tion form which does not identify Tidewater as the potential creditor. He further testified that he had no evidence indicating that the dealership would have, or did, inform the juror or any applicant that Tidewater was the actual creditor. It is thus very likely that the juror was never aware that his credit application was processed by Tidewater. If the juror did not know that he had applied for credit through Tidewater, his failure to respond to the Court's questions about business dealings with Tidewater was, while erroneous, not dishonest. It is Plaintiff's burden to establish that it is entitled to a new trial, see McDonough, 464 U.S. at 556, 104 S.Ct. 845, and it cannot begin to meet that burden if it can produce no evidence indicating that the juror's response was in fact dishonest.

The juror's answers to the remaining disputed voir dire questions were accurate on their face. The Court asked whether any member of the panel had ever purchased furniture using in-store financing, and the juror did not respond. However, while it appears from the credit reports that the juror's wife made a purchase through Home Furnishings in 1992, there is no indication that the juror himself made any such purchase. Because the Court's question asked only for information about the panel members themselves, the juror properly did not respond.

Similarly, a bankruptcy filing is not technically a "litigation involving the nonpayment of a debt," as the Court asked about during voir dire. It is not clear that the question required disclosure of his bankruptcy status.[6] See McDonough, 464 U.S. at 555, 104 S.Ct. 845 (finding no dishonesty where juror failed to reveal past injury because he did not believe it involved disability or prolonged pain and suffering, as question had asked).

"[J]urors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." McDonough, 464 U.S. at 555, 104 S.Ct. 845. The Court's question followed several questions regarding suits for breach of contract and suits against finance companies. It is therefore not unlikely that the juror understood the question only to encompass traditional litigation, and not to require disclosure of his bankruptcy status.

(2) *Valid Basis for Challenge for Cause*

The *McDonough* court stated that "[d]emonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges." *McDonough*, 464 U.S. at 555, 104 S.Ct. 845. The second part of the *McDonough* test requires Plaintiff to show that a correct and honest response to the Court's voir dire questions would have provided a valid basis for a challenge for cause. *See McDonough*, 464 U.S. at 556, 104 S.Ct. 845. Thus, a mere showing of prejudice through a party's inability to exercise intelligently its peremptory strikes is insufficient. *See id.* Accordingly, if the Court finds that even correct responses by the juror would not have provided a basis for disqualification for cause, Plaintiff is not entitled to a new trial.[7]

■ Disclosure of the fact that the juror had filed for bankruptcy and that his wife had bought furniture using retailer financing in 1992 (assuming the Court's questions should have elicited that information) would not have provided a sufficient basis for a challenge for cause. The Court further notes

6. Nor is it clear that the Court or the parties intended the question to elicit such information.

7. The *McDonough* test is stated in terms of a challenge for cause, and does not specifically require proof that the Court would have in fact struck the juror for cause. However, the *McDonough* requirement of a *valid* challenge and that court's assertion that "hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges" suggest that a party's mere assertion that

he would have made a challenge for cause is insufficient if there was no likelihood that the Court would have excused the juror for cause. *See McDonough*, 464 U.S. at 555–56, 104 S.Ct. 845; *see also Madison Management*, 918 F.2d at 449 (stating that because the district court would not have considered a truthful response at voir dire sufficient to justify excusing the juror for cause, the party was not entitled to a new trial under *McDonough* ).

that Plaintiff did not challenge the juror for cause even after he revealed that he had been contacted by a debt collector, a fact arguably more pertinent than his bankruptcy filing. Moreover, Plaintiff did not even choose to question the juror further when it discovered that the juror had been contacted by a debt collector. The Court thus finds somewhat incredible Plaintiff's argument that knowledge of the juror's bankruptcy status would have prompted it to challenge him for cause.

### 3. Conclusion

The Court does not consider it necessary to question the juror on this matter. Plaintiff has waived its right to challenge the juror's qualifications after trial, since the basis for its challenges could have been discovered prior to voir dire. Moreover, despite Plaintiff's broad allegations, the record is devoid of any reliable indication that the juror was dishonest during voir dire or that his deliberations were biased. Although the Court has the discretion to conduct a hearing to determine juror bias, it need not do so where the allegations of bias are thin and speculative. *See United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir.1992). Since it is Plaintiff's burden to prove its entitlement to a new trial, the Court believes that Plaintiff must first present some evidence indicating that the juror was dishonest or biased before it will subject the juror to unnecessary questioning and risk compromising the integrity of the jury. Absent evidence to the contrary, the Court presumes "that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court." *Id.* The Court does not believe that Plaintiff can carry its burden of proving entitlement to a new trial merely by piling faint possibility upon faint possibility. Accordingly, Plaintiff's motion for a new trial is **DENIED.**

### B. Plaintiff's Motion for Judgment as a Matter of Law

Plaintiff claims that it is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on two main grounds. First, Plaintiff challenges the suffi-

ciency of the evidence regarding whether Tidewater had reached an agreement to settle. Second, Plaintiff argues that it is entitled to judgment as a matter of law on the issue of liquidated damages. It challenges the jury's award of liquidated damages on four grounds, arguing that:

(1) The Contract's liquidated damages provision is unenforceable under Florida law;[8]

(2) Liquidated damages are only available if Plaintiff transferred services to a competitor or in-house, and Defendant failed to show that the services were so transferred;

(3) Defendant failed to meet its burden to prove liquidated damages because the liquidated damages were not properly calculated according to the Contract; and

(4) Liquidated damages are only available in the event of "partial breach," and Defendant only claimed and proved premature *termination* of the Contract.

### 1. Legal Standard

Rule 50(b) of the Federal Rules of Civil Procedure provides that

[i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.

A party is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir.1996) (quoting *Bryan v. James E. Holmes Regional Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994)). If there is any evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, judgment as a matter of law should not be granted. *See id.* However, judgment as a matter of law is appropriate when the evidence supports only one reasonable conclusion. *See Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir.1995). The Court must review the evidence and all

**8.** The Contract's choice of law provision provides for the application of Florida law.

reasonable inferences in the light most favorable to the nonmoving party. *See Price,* 93 F.3d at 1249. In considering a motion for judgment as a matter of law, the Court must not re-weigh the evidence, make credibility determinations, or substitute its own judgment for the jury's. *See id.; Thompson v. Direct Impact Co.,* 63 F.Supp.2d 721, 723 (E.D.Va.1998). In short, a party moving for judgment as a matter of law bears a heavy burden to establish that the jury's verdict should be invalidated. *See Thompson,* 63 F.Supp.2d at 723. In ruling on a renewed motion for judgment as a matter of law, a court may allow the jury's verdict to stand, order a new trial, or direct entry of judgment as a matter of law. *See* Fed.R.Civ.P. 50(b).

## 2. Discussion

### a) *Settlement Agreement*

■ Plaintiff contends that it is entitled to judgment as a matter of law on the jury's finding that there was no agreement between the parties to settle their disputes and allow Plaintiff to terminate the agreement early without penalty. Plaintiff argues that since Plaintiff presented the only evidence on this issue, without any rebuttal testimony by Defendant's witnesses, it clearly met its burden of proving that such an agreement was reached. However, the standard for reviewing a verdict on a motion for judgment as a matter of law prohibits the Court from re-weighing the evidence or substituting its own credibility determinations for the jury's. *See Thompson v. Direct Impact Co.,* 63 F.Supp.2d 721, 723 (E.D.Va.1998). At trial, both Nathan Benson and Sagie Doron testified for Plaintiff that Defendant made an offer to settle. However, Harry Shuman, the president of Fiserv, testified that he was not aware that any offer to let Plaintiff out of its Contract was actually made, *see* Shuman Tr., Jan. 24, 2000, at 52, although he

had authorized the making of such an offer. *See* Pretrial Ex. 129. Moreover, Defendant impeached Mr. Benson's credibility by highlighting the absence of any written memorialization of the agreement. *See* Tr. of Proceedings, Benson Test., Jan. 21, 2000, at 74–75. Accordingly, a reasonable jury could have found that Plaintiff's evidence was not credible and that Plaintiff had offered insufficient proof that a settlement agreement was reached. Plaintiff's motion for judgment as a matter of law on this ground is therefore denied.

### b) *Liquidated Damages*

#### (1) *Unenforceability of Liquidated Damages Clause–Waiver*

■ At trial, Defendant argued that Plaintiff breached its contract by terminating it early, and that Defendant was entitled to liquidated damages as provided in the Contract. Plaintiff argues that the Contract's liquidated damages clause is unenforceable under Florida law, and that therefore the jury's verdict must be set aside and judgment entered for Plaintiff as a matter of law. Defendant claims that Plaintiff waived any claim that the liquidated damages provision in the Contract constitutes an unenforceable penalty, because it did not raise this argument as an affirmative defense in its initial pleadings.[9] Federal Rule of Civil Procedure 8(c) requires a party to raise any affirmative defenses in its initial responsive pleading. Failure to assert an affirmative defense in a responsive pleading ordinarily waives that defense. *See Williams v. Gradall Co.,* 990 F.Supp. 442, 446 (E.D.Va.1998). A finding of waiver is especially justified where the opposing party would be unduly prejudiced by the failure to timely raise the defense. *See id.* In a diversity action, whether a particular defense must be pleaded as an affirmative defense is a question of state law. *See Troxler v. Owens–Illinois, Inc.,* 717 F.2d 530, 532

---

**9.** Defendant claims that Plaintiff has waived most of its arguments because it did not raise them in its Rule 50 motion at the close of evidence during trial. Since a post-trial motion for judgment as a matter of law pursuant to Rule 50(b) is a renewal of a motion made at the close of evidence, courts have found that a motion made after trial may only be based on the grounds raised in the earlier motion, and any

other arguments are waived. *See Ramar Coal Co. v. International Union,* 814 F.Supp. 502, 508–09 (W.D.Va.1993). However, Plaintiff made the arguments it raises now, with the exception of the argument regarding proof of transfer to a competitor, in its prior Rule 50 motion at the close of evidence. *See* Tr. of Pl.'s R. 50 Mot., Jan. 31–Feb. 1, 2000, at 5, 8, 9. Thus, those arguments are not waived.

**524**

(11th Cir.1983). A claim that a liquidated damages provision in a contract is unreasonable or unenforceable constitutes an affirmative defense under Florida law, and must be pleaded as such. *See Public Health Trust v. Romart Construction*, 577 So.2d 636, 638 (Fla.3d Dist.Ct.App.1991); *J.M. Beeson Co. v. Sartori*, 553 So.2d 180, 181 (Fla. 4th Dist. Ct.App.1989).

■ In its answer to Defendant's breach of contract counterclaim, Plaintiff admitted to the wording of the liquidated damages provision in the Contract, but "state[d] affirmatively that the wording of the agreement does not impose any liability upon Tidewater." Plaintiff argues that this put Defendant on notice of any and all challenges that Defendant might make to the liquidated damages provision of the Contract. However, Plaintiff's answer does not satisfy the pleading requirements of Rule 8(c), since it does not specifically assert the unreasonableness or unenforceability of the liquidated damages provision. Rather, Plaintiff's answer suggests only a general averment to the imposition of any liability for damages on Plaintiff. At the hearing, Plaintiff argued that Defendant's billing records[10] revealed that Defendant had researched the issue prior to trial, indicating that Defendant had anticipated an unenforceability defense. Plaintiff thus argues that its failure to notify Defendant of its intention to challenge the validity of the liquidated damages clause through proper pleading could not have been prejudicial to Defendant. However, Defendant's own preparation for a possible challenge to the liquidated damages clause does not eviscerate the need for Plaintiff to provide notice of its intention to make such a challenge. Had Defendant known that Plaintiff might challenge the liquidated damages clause, it may have chosen to produce evidence at trial of its actual damages, rather than proceeding solely on a theory of liquidated damages. Accordingly, Plaintiff has waived its ability to

argue now that the liquidated damages clause is invalid and unenforceable as a matter of law. Plaintiff's motion for judgment as a matter of law of this ground is therefore denied.

### (2) *Proof of Transfer to a Competitor*

■ Paragraph 20(b) of the Contract provides that "[i]t shall be a breach of this Agreement if Client transfers . . . any of the Services provided hereunder to a competitor or to in-house capabilities such that the gross billings of FIS to Client for the services declines. . . ." Plaintiff argues that there was no evidence that it transferred its business to a "competitor" of Fiserv's as required by the Contract, and therefore it is entitled to judgment as a matter of law.

While the evidence did not specifically establish that Tidewater transferred services to one of Fiserv's competitors, it did establish that Plaintiff purchased a new system and transferred services from Fiserv to the new provider. *See* Benson Tr., Jan. 20, 2000, at 91–92; Tr. of Proceedings, Benson Test., Jan. 21, 2000, at 58. Plaintiff argues that the evidence established that Defendant did not typically solicit business from finance companies, and therefore Fiserv was not a competitor of companies who specialize in serving finance companies. Nevertheless, the evidence was sufficient, particularly in light of Plaintiff's heavy burden under the Rule 50 standard, for the jury to infer that a transfer by Plaintiff of the very same services that Defendant had formerly provided was a transfer to a competitor of Fiserv.[11] Thus, Plaintiff's motion on this ground is denied.[12]

### (3) *Calculation of Liquidated Damages*

■ Plaintiff argues that it is entitled to judgment as a matter of law because Defendant incorrectly calculated the liquidated damages according to the Contract. The Contract provides for the calculation of liqui-

---

10. Produced in support of Defendant's petition for attorney fees.

11. The Court notes that the first listing in Webster's Third New International Dictionary (1981) defines "competitor" simply as "one that seeks what another seeks or claims what another claims."

12. In addition, the Court notes that Plaintiff did not raise this particular ground in its Rule 50 motion at the close of evidence. Accordingly, it has waived its right to make it now. *See Ramar Coal Co. v. International Union*, 814 F.Supp. 502, 508–09 (W.D.Va.1993).

dated damages based on the six full months immediately preceding Plaintiff's transfer of services to a competitor. *See* Contract, Pretrial Ex. 14, ¶ 20(b), (c). According to Plaintiff, Defendant calculated the liquidated damages based on the February 28, 1999, Contract termination date, counting back the six months prior to that date according to the formula provided in the Contract. However, there was evidence that Plaintiff actually transferred its accounts in December of 1998, not February of 1999.[13] Plaintiff contends that the jury's award of damages based on the February 1999 date, rather than on the December 1998 date that Plaintiff transferred its accounts, was incorrect as a matter of law because it was not consistent with the Contract provisions.

However, although there was evidence that Plaintiff transferred its accounts and went "off-line" in December 1998, *see, e.g.,* Guttman Tr., Jan. 28, 2000, at 22, 24, there was also evidence that Defendant continued to provide services to Plaintiff until February 1999. *See* Guttman Tr., Jan. 28, 2000, at 5, 25. Linda Guttman, Fiserv's chief financial officer, testified that, although Defendant suspected that Plaintiff had removed its accounts from the Fiserv system in December 1998, it had no confirmation of its suspicions until February 1999, when Plaintiff informed Defendant that it was terminating the Contract. Thus, between December 1998 and February 1999, Defendant continued to generate and transmit reports for Plaintiff, even though Plaintiff ceased to accept the reports.[14]

The Contract provides for the calculation of liquidated damages based on the date of transfer of *Defendant's services,* not the date

of transfer of Plaintiff's accounts. Plaintiff argues that, in this context, "services" refers not to services provided by Fiserv, but to Plaintiff's accounts. However, the Contract itself belies this interpretation. The Contract consistently refers to "Services" as the information processing services to be provided by Defendant. The introductory paragraph of the Contract states that "FIS agrees to provide information processing services (hereinafter referred to as "Services") to Client as described in Exhibit "A" attached hereto and made a part hereof." *See* Contract, Pretrial Ex. 14. Exhibit "A" describes various services to be provided by Defendant. *See id.* Accordingly, a reasonable jury could interpret the Contract as referring to the date of transfer of Defendant's services and not of Plaintiff's accounts. There was sufficient evidence from which a jury could conclude that Defendant's services were not transferred until February 1999 and award damages based on that date.

Moreover, it was ultimately the jury's responsibility to determine the proper measure of damages. The jury was presented with two alternative dates from which to base a liquidated damages award. Although there was evidence that Plaintiff went off-line in December 1998, there was also evidence that Plaintiff concealed that fact until February 1999. As a result of this concealment, Defendant was uncertain of the exact date that Plaintiff ceased using the Fiserv system. A reasonable jury, confronted with the ambiguity—caused by Plaintiff's own dishonesty—surrounding the exact date of Plaintiff's deconversion in December of 1998, could have decided to fix February 1999 as the only

---

**13.** Defendant also submitted evidence calculating damages based on a December 1998 date, counting back six months from December 1998 through July 1998. Plaintiff contends that the damage calculation based on the December 1998 transfer date was incorrect. The evidence established that Defendant began to suspect that Plaintiff had transferred its accounts at some point in mid-December of 1998, because transactions stopped being processed at that time. Plaintiff argues that any liquidated damages calculation based on a December 1998 transfer date should have counted back the six month period from December 15, 1998. Alternatively, Plaintiff claims that the calculation should have been made from November 1998 back through June

1998, since the Contract provides for liquidated damages based on the six full months immediately *preceding* the transfer. However, as Plaintiff concedes, this point is irrelevant because the jury did not award damages based on Defendant's December 1998 calculation.

**14.** Linda Guttman testified that Defendant asked Plaintiff why the reports were not being processed, and that Plaintiff did not reveal that it had deconverted from the Fiserv system. Instead, Plaintiff told Defendant that the transactions were being held and would be processed later. *See* Guttman Tr., Jan. 28, 2000, at 25.

certain date from which it could calculate liquidated damages. It was within the province of the jury to do so, and there is sufficient evidence in the record to support that determination.

Accordingly, Plaintiff's motion on this ground is denied.

#### (4) *Availability of Liquidated Damages for Termination of the Contract*

Plaintiff contends that, according to the Contract, liquidated damages are available only in the event of "partial breach," not for early termination of the Contract. Defendant proceeded through trial on the theory that it was entitled under the Contract to *termination fees* calculated in accordance with the liquidated damages formula in paragraph 20(c) of the Contract and based on the February 1999 date of Contract termination. *See* Guttman Tr., Jan. 28, 2000, at 8, 16. Even though Defendant presented alternative evidence of its liquidated damages calculated based on the December 1998 date that Plaintiff went off-line, the jury's award was clearly based on the February 1999 termination date.[15] According to Plaintiff, the jury's award of liquidated damages based on the February 1999 termination date conflicts with the provisions of the Contract and thus cannot be upheld as a matter of law. However, the Court finds that the contract permits the recovery of liquidated damages based on the February 1999 date.

At trial, Defendant sought to recover based on paragraphs 20(b) and 20(c)(ii) of the Contract. Those sections provide:

b) It shall be a breach of this Agreement if Client transfers without the written approval of FIS any of the Services provided hereunder to a competitor or to in-house capabilities such that the gross billings of FIS to Client for the Services declines by more than five percent (5%) following such transfer, as measured against the average monthly gross billings of Client during the six (6) month period immediately preceding such transfer.

c) In the event of default under paragraph 20(b), FIS shall have the right to (i) declare in writing a default under paragraph 20(a)(z) or, at FIS' sole option, (ii) declare in writing a partial breach entitling FIS to liquidated damages calculated as follows: a sum equivalent to the average monthly gross revenue received by FIS on account of the Services of FIS transferred either to a competitor or to in-house capabilities by Client during the six (6) full calendar month period immediately preceding such transfer, which average monthly sum shall be multiplied by the remaining term of this Agreement.... The liquidated damages provided herein shall be paid within thirty (30) days of date FIS declares a partial breach under this paragraph 20(c)(ii). Unless FIS exercises its option to declare a breach under paragraph 20(a)(z), a default declared by FIS under paragraph 20(c)(ii) shall not constitute a breach of this Agreement entitling either party to terminate this Agreement.

Plaintiff does not dispute that paragraph 20(b) of the Contract can apply to a one hundred percent transfer of services. The Court has already found that there was sufficient evidence for a jury to determine that, although Plaintiff went off-line from Fiserv's system in mid-December 1998, Defendant continued to provide services until February 1999, when they were terminated and definitively transferred. *See* discussion *supra* Part II.B.2(b)(3). Accordingly, a reasonable jury could find that damages should be awarded based on a February 1999 date, and such a finding would not be inconsistent with paragraph 20(b) of the Contract. That Plaintiff's transfer of services coincided with its termination of the Contract does not render paragraph 20(b) inapplicable.

Paragraph 20(c) of the Contract merely describes the procedural mechanisms for the recovery of damages for a breach under paragraph 20(b). The Court notes in this context that paragraph 20(c)(ii) refers only to a *declaration* of partial breach. It poses no requirement that there in fact be a partial breach. To the contrary, the substantive

---

**15.** Defendant offered two alternative calculations of liquidated damages, based on a February 1999 and a December 1998 date. The jury's award matched, to the penny, the liquidated damages calculation based on the February 1999 date.

determination of the existence of a breach entitling Defendant to damages is governed by paragraph 20(b), not by paragraph 20(c)(ii). The term "partial breach" is nowhere defined in the contract, and exists only by reference to a breach under paragraph 20(b). The Court therefore finds that the key issue in determining Defendant's entitlement to liquidated damages is whether the requirements of 20(b) have been satisfied. Plaintiff's complete transfer of services in February 1999 falls within the parameters of paragraph 20(b). Defendant was therefore entitled to select a method of recovering damages under paragraph 20(c). Thus, the Court rejects Plaintiff's claim that liquidated damages are available only in the event of a partial breach.

Furthermore, the Court does not believe that Defendant's failure to present evidence specifically proving that it *declared* a partial breach under paragraph 20(c)(ii) precludes the recovery of liquidated damages. Defendant presented evidence of Plaintiff's breach under paragraph 20(b) and evidence that it sent Plaintiff a letter calculating, according to paragraph 20(c)(ii), the amount of liquidated damages owed. *See* Guttman Tr., Jan. 28, 2000, at 7–8. For the Court to overturn the jury's verdict based on the absence of proof regarding Defendant's characterization, in that letter, of Plaintiff's breach would unduly elevate form over substance. Accordingly, the Court finds that Defendant presented sufficient proof of its compliance with all material requirements of the contract.

Plaintiff's motion on this ground is therefore denied.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for a new trial pursuant to Rule 59. The Court further **DENIES** Plaintiff's motion for judgment as a matter of law pursuant to Rule 50(b).

The Clerk is **DIRECTED** to send a copy of this Order to counsel for Plaintiff and to counsel for Defendant.

**IT IS SO ORDERED.**