FIRST NATIONAL EXCHANGE BANK OF VIRGINIA

V.

PEGGY M. JOHNSON

Record No. 840164

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

*Charles E. Schelin (Browning, Morefield and Schelin, P.C.,* on brief), for appellant.
*David L. Scyphers (Johnson, Scyphers and Austin, P.C.,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This is an appeal in an action brought by a bank to recover on a demand note. We must determine whether the trial court erred in denying recovery against one of two makers of the note upon grounds of lack of consideration and constructive fraud.

The facts mainly are undisputed. In 1978, appellant First National Exchange Bank of Virginia through its branch office in the town of Lebanon made a commitment to Earl D. Johnson for a line of credit of $40,000 for the purpose of building a house for resale in Russell County. Johnson defaulted on the unsecured obligation after he had drawn the full amount.

In January 1980, after making demand on Johnson for payment, the Bank decided not to proceed to collect on the obligation and to permit Johnson to "renegotiate" the loan by executing a note secured by a deed of trust on the real estate, known as the "Fincastle property." Thus, on January 25, Johnson executed a negotiable demand note (the Fincastle note) in the amount of $40,000, with interest at the rate of 14 percent per annum, and a first deed of trust on the property to secure the indebtedness.

At that time, appellee Peggy Mitchell Johnson (hereinafter, Mitchell) and Earl D. Johnson were living together and, although unmarried, represented themselves to be husband and wife. Because the Bank officials "presumed" Mitchell was Johnson's wife, the Bank asked her to execute the note and the deed of trust "to give [the Bank] security related to her dower interest in the property." Mitchell, who signed the note and deed of trust "Peggy M. Johnson," later denied that she "knowingly" signed any documents obligating herself "on the Fincastle property."

At the same time on January 25, Johnson and Mitchell had executed documents to close another loan transaction with the

Bank. An installment note (the Green Valley note) in the amount of $40,000, with interest at the rate of 12 ¼ percent per annum, and a second deed of trust securing the obligation were executed in favor of the Bank by Johnson and Mitchell. She signed the note, deed of trust, and truth-in-lending statements "Peggy M. Johnson." The deed of trust was on Earl Johnson's personal residence, known as the "Green Valley Estates property," where he, Mitchell, and her children were living. There is no dispute about the validity of that transaction.

Johnson and Mitchell defaulted under the Fincastle note. In July 1982, the Bank foreclosed on the deed of trust and sold the Fincastle property at auction, incurring a deficiency which Johnson and Mitchell refused to pay.

In November 1982, the Bank filed the present action against Johnson and Mitchell on the Fincastle note to recover the deficiency, alleged to be in excess of $20,000. Subsequently, Johnson died and judgment by default was entered against his estate in February 1983.

Later, after a bench trial of the claim against Mitchell, the trial court ruled that "the signature of Peggy Mitchell on [the] note was without legal consideration and unenforceable." The court further ruled that because the Bank "innocently and inadvertently" failed "to properly inform her that she was signing a $40,000.00 note on the Fincastle . . . property for the sole purpose of paying off the defaulted [obligation] of Earl D. Johnson," the Bank committed constructive fraud. We awarded the Bank this appeal from the November 1983 final order dismissing the action against Mitchell.

On appeal, Mitchell argues that the trial court correctly ruled there was no consideration to support her liability under the note in question. She says the evidence was uncontradicted that the note was given to enable the Bank to become secured in connection with the original, unsecured line of credit extended to Johnson. Therefore, she contends, the Bank suffered no detriment because it was in a better position after the Fincastle note was executed than before. In addition, Mitchell argues, the evidence showed that she did not participate in any negotiations preliminary to the loan transaction evidenced by the Fincastle note and that she had no legal interest in the Fincastle property. Thus, she urges, there was no benefit to her. The Bank argues that its forbearance to proceed against Johnson for the line-of-credit indebt-

edness was a detriment which constituted sufficient consideration to support enforcement of the note against her. In this factual context, neither argument is relevant.

█ Resolution of the consideration issue is governed by § 8.3-408 of the Uniform Commercial Code (UCC). As pertinent here, the statute provides,

> "Want or failure of consideration is a defense as against any person not having the rights of a holder in due course . . . , except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind."

The Official Comment, in paragraph 2, states that

> "The 'except' clause is intended to remove the difficulties which have arisen where a note or a draft, or an indorsement of either, is given as payment or as security for a debt already owed by the party giving it, or by a third person. The provision is intended to change the result of decisions holding that where no extension of time or other concession is given by the creditor the new obligation fails for lack of legal consideration."*

Manifestly, the undisputed facts of this case bring it squarely under the foregoing statute. Johnson had an antecedent obligation to the Bank arising from the 1978 commitment. The 1980 instrument in question was given in payment of that antecedent obligation, it being given by Mitchell as payment for a debt already owed by a third person, Johnson. Thus, no consideration was necessary to support Mitchell's promise.

Although we have not considered a case like this under the statute since adoption of the UCC, other jurisdictions construing the same UCC section have also determined, under similar facts, that an antecedent debt of a third person is a substitute for consideration. For example, in *Newman Grove Creamery Co.* v. *Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981), the court sustained recov-

---

* Neither party called § 8.3-408 to the attention of the trial court or this Court. Subsequent to oral argument of the appeal, the parties at our direction addressed in writing the applicability of the statute. The Bank now contends the statute "is directly on point," while Mitchell argues that "this code section [deals] with the antecedent liability of the person originally liable on said note, not with the liability of a third party."

ery in favor of a creamery company against parents on a promissory note made by them in an amount approximating the balance of an account owed by their son to the company. In *First Nat. Bank of Jackson* v. *Carver*, 375 So.2d 1198 (Miss. 1979), the court held a widow liable to the bank on a note given as renewal of her first note which had been executed in payment of an antecedent debt of her late husband to the bank. *See also Cissna Park State Bank* v. *Johnson*, 21 Ill.App.3d 445, 315 N.E.2d 675 (1974); *Stockwell* v. *Bloomfield State Bank*, 174 Ind. App. 307, 367 N.E.2d 42 (1977), *overruled on other grounds, Farner* v. *Farner*, 480 N.E.2d 251 (Ind. App. 1st Dist. 1985). *But see Capital City Bank* v. *Baker*, 59 Tenn. App. 477, 442 S.W.2d 259 (1969).

Alternatively, Mitchell argues that the trial court correctly ruled the note was unenforceable against her because of the Bank's constructive fraud. Mitchell contends that due to the "circumstances surrounding these particular notes," the Bank had "a duty to explain . . . there were two separate notes for $40,000.00 each."

Mitchell testified that when she signed the numerous documents on January 25, she did not "understand" she was obligating herself on two separate loans for $40,000. Instead, Mitchell stated, she believed she only was "signing $40,000.00 on our home in Green Valley." She testified that she "didn't know anything" about her obligation in connection with the Fincastle loan until the foreclosure proceedings commenced. There was no dispute that Mitchell signed the documents in question and that she could read and write.

The Bank's loan officer present at the closing of the transactions testified, however, that she explained the documents to Mitchell before they were executed. She testified that the first set of documents signed by the parties was for the personal transaction involving the Green Valley Estates property. The officer testified that before signing the note in question for the commercial transaction Mitchell asked Johnson: "[D]o you want me to sign this one, too?" According to the testimony, Johnson responded, "[Y]es. We're in this together." The officer admitted on cross-examination that while her standard procedure in matters of this kind was to explain the transaction to the parties, she could not "state without a doubt under oath" that the explanation was furnished "in this instance."

Mitchell argues that the Bank had a duty "to do more than just lay the documents on the desk" in this commercial transaction, and that the Bank's "neglect and omission" amounts to constructive fraud. We do not agree.

■ Even though Mitchell did not testify explicitly that the nature of the transactions was not explained to her fully before she signed the note in question, we will consider the evidence to be that no such explanation was made. Nevertheless, the Bank owed no duty under these circumstances to explain that which was perfectly obvious to even the most casual reader of these documents.

The first set of papers the parties signed dealt with a personal loan transaction on Johnson's home. That note provided for payments in installments of a fixed amount and for 12 ¼ percent interest. The indebtedness was secured by a second deed of trust on the Green Valley Estates property. In contrast, the second set of papers signed by the parties dealt with a commercial loan transaction. That note was a demand instrument providing for a different rate of interest than the other note. The indebtedness was secured by a first deed of trust on different property than the other trust deed. And the record is devoid of any evidence that Mitchell lacked the capacity to understand what she was signing. The record merely contains Mitchell's testimony that she failed to "understand" or "knowingly sign" the note in question. Such evidence is wholly insufficient to establish the duty necessary to support a finding of constructive fraud against the Bank, and the trial court erred in ruling to the contrary.

■ Therefore, the note in question is enforceable against Mitchell. In the absence of fraud, duress, or mutual mistake, as here, an individual having the capacity to understand a written document who signs it after reading it, or who signs it without reading it, is bound by the signature. *Metro Realty* v. *Woolard*, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982). *See also* Code § 8.3-413(1).

Thus, the judgment below will be reversed and the case remanded to the trial court with instructions to enter judgment on the note in favor of the Bank for the proper amount due.

*Reversed and remanded.*