## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax Company
of Virginia, L.L.C.

v.

Samson Realty, L.L.C.

September 11, 2007

Case No. CL-2007-1269

BY JUDGE STANLEY P. KLEIN

In this commercial lease dispute, the plaintiff, Fairfax Company of Virginia, L.L.C. ("Fairfax Company") moves the court to strike the defendant, Samson Realty, L.L.C.'s ("Samson Realty") demand for a trial by jury, based upon a provision in the lease agreement between the parties ("the Agreement"). That provision purported to waive, *inter alia*, each party's right to a jury trial arising out of disputes concerning the Agreement. Samson Realty contends that this contractual provision cannot be legally enforced. This court must, therefore, balance the fundamental right to a jury trail recognized in the Virginia Constitution against the liberty interest of Virginia's citizens to enter into binding contracts. For the reasons set out below, this court holds that the written jury waiver executed by Fairfax Company and Samson Realty is enforceable, and, as a result, the motion to strike the jury demand is granted.

### I. *Background*

Fairfax Company entered into the Agreement with Samson Realty on February 13, 2004, to lease certain premises at Fair Oaks Mall to Samson Realty. The Agreement is comprised of the following

components: (1) Table of Contents, two pages; (2) Data Sheet, two pages; (3) Standard Form Lease, thirty pages; (4) Exhibits, nineteen pages; and (5) Guaranty, two pages.

The Data Sheet, in its Preamble, initially states that "[a]ll of the provisions of [the Agreement], including the Data Sheet, the standard provisions commencing with Article I and continuing through Article XXVII of [the Agreement] . . . *and all exhibits are incorporated in full in this preamble as if fully set forth at this point.*" Compl. Ex. A at D1 (emphasis added). The Data Sheet concludes with an "Execution/Acknowledgement," signed by both parties, which provides:

> In confirmation of their agreement to enter into this Lease (*including the Preamble, Data Sheet, Standard Form, and all exhibits attached hereto*) and intending to be bound hereby, Landlord and Tenant have signed and sealed this Lease as of this day and year written upon page D1 of this Lease.

Compl. Ex. A at D2 (emphasis added). In addition, at the conclusion of the Standard Form Lease, which contains the jury waiver provision, the following language is set out in bold print: "End of Standard Form; signature and acknowledgement pages for the Lease appear immediately following the Data Sheet." Compl. Ex. A at S.30.

The provision of the Agreement presently at issue is Section 19.04 "Waiver of Counterclaims and Trial by Jury," which states in pertinent part as follows:

> *Landlord and Tenant waive their right to trial by jury in any action, proceeding, or counterclaim brought by either of the parties hereto against the other* (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. . . .

Compl. Ex. A at S.23 (emphasis added).

Fairfax Company filed suit on February 1, 2007, for breach of the Agreement arising out of Samson Realty's alleged non-payment of rent. On April 13, 2007, Fairfax Company presented its motion to strike Samson Realty's jury demand, which had been made at the parties' March 29, 2007, scheduling conference. Both parties signed the court's Scheduling Order

which set this matter down for a trial with a jury; however, at argument on Fairfax Company's Motion to Strike the Defendant's Jury Demand, the parties agreed that the endorsement of the scheduling order did not preclude Fairfax Company from subsequently seeking to strike the Samson Realty's jury demand based upon the relevant language of the Agreement. At the April 13, 2007 hearing, neither side elected to present any evidence. During the course of the argument, the court, *sua sponte*, raised the issue of whether an evidentiary hearing would be needed to determine the enforceability of the jury waiver provision. As neither party had fully briefed this issue, the court requested supplemental briefs from both parties and asked defense counsel to provide an affidavit specifying any material circumstances surrounding the execution of the Agreement which could affect the validity of the jury waiver provision. The court then took the matter under advisement. Counsel for the parties contacted the court subsequent to the April 13th hearing and requested that the court refrain from ruling on the Motion to Strike the Defendant's Jury Demand because the parties were close to settling the entire case. They later advised the court that their settlement efforts were unavailing.

In response to the court's request, Samson Realty provided an affidavit from John David Samson, the principal managing member of Samson Realty. In his affidavit, Mr. Samson averred that (1) he had read the Data Sheet, but not the entirety of the Standard Form Lease; (2) he had not read the jury waiver provision prior to executing the Agreement on behalf of Samson Realty; (3) the Standard Form Lease had been presented to him "without opportunity to negotiate the terms of the Standard Form" and there were no negotiations between the parties concerning the terms of the Standard Form Lease (Samson Aff. ¶ 5); (4) no lawyer for Samson Realty had reviewed the Agreement prior to its execution by Mr. Samson; and (5) he did not intend to waive Samson Realty's right to a jury trial. Based upon these facts, Samson Realty contends that it is entitled to have the jury waiver provision declared unenforceable and now seeks an evidentiary hearing on that issue.

Fairfax Company responds that Mr. Samson's affidavit does not raise any material factual issues that warrant the court's holding an additional hearing to enable the parties to introduce evidence. It contends that this court should now rule that the jury waiver provision at issue is enforceable.

## II. *Analysis*

Article 1, § 11, of the Commonwealth of Virginia's Constitution declares, "[t]*hat in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held*

*sacred.* The General Assembly may limit the number of jurors for civil cases in courts of record to not less than five." Va. Const., art. I, § 11 (emphasis added). The Supreme Court of Virginia has held, however, that a "party may enter into an agreement in which he waives a significant right." *Gordonsville Energy, L.P. v. Virginia Electric and Power Co.*, 257 Va. 344, 355, 512 S.E.2d 811, 818 (1999). Indeed, in *Azalea Drive-In Theater, Inc. v. Sargoy*, 215 Va. 714, 214 S.E.2d 131 (1999), the Supreme Court of Virginia held that a contractual waiver of the right to a jury trial is enforceable, so long as the underlying contract is valid and enforceable. *Id.* Apparently, the argument presented to the *Azalea* Court concerning the validity of the contractual jury waiver provision was founded solely on the legality of the entire contract, rather than the enforceability of the provision itself. The Supreme Court, however, has not yet addressed whether a jury waiver provision in an enforceable contract may itself be invalid, and, if so, the factors which a court must weigh in determining the validity of such a provision. Two other judges of the Fairfax County Circuit Court have held that such contested jury trial waivers are in fact enforceable. See *Carr v. Craftmark Homes, L.C.*, 38 Va. Cir. 1 (1995); see also *Haroon v. Church Road, L.P.*, No. 116586 (Fairfax Cir. Ct. Feb. 10, 1993). This court's analysis is nonetheless ably guided by decisions of both state and federal courts.

The United States Supreme Court has recognized that, although "trial by jury is a fundamental guarantee of the rights and liberties of the people" and "every reasonable presumption should be indulged against its waiver," parties may "stipulate in writing for the waiver of a jury." *Hodges v. Easton*, 106 U.S. 408, 412 (1882). This fundamental right to a jury trial must be juxtaposed against the equally well-recognized right of a citizen to contract privately as the right to contract has long been recognized as "no small part of the liberty of the citizen." *Atlantic Greyhound Lines v. Skinner*, 172 Va. 428, 439, 2 S.E.2d 441, 446-47 (1939). The Federal Circuit, in balancing a party's constitutional right to a jury trial against the freedom to contract, has found that a voluntary waiver of the right to a jury trial "suffers from no inherent constitutional legal infirmity." *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1564 (Fed. Cir. 1990); cert. denied, 499 U.S. 919 (1991). Indeed, in *Leasing Service Corp. v. Crane*, the United States Court of Appeals for the Fourth Circuit upheld the enforceability of a contractual jury waiver provision in a commercial lease. 804 F.2d 828, 832 (4th Cir. 1986). The *Crane* court, in essence, adopted the "knowing and voluntary" waiver test that has been adopted overwhelmingly by the courts that have addressed this issue. The *Crane* court phrased it "knowingly and intentionally." *Id.* at 832. See *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985). These courts, however, have differed on whether the

proponent of the waiver has the burden to establish a knowing and voluntary waiver or whether the opponent of the contractual jury waiver provision has the burden to establish the opposite. Compare *Crane* 804 F.2d at 832 (finding that the proponent of a jury waiver has the burden of establishing a knowing and voluntary waiver) with *Irving Trust Co.*, 757 F.2d at 758 (holding that the opponent of a contractual jury waiver bears the burden of proving that the waiver was not knowingly and voluntarily made).

Based upon its review of the relevant precedents, this court also adopts the knowing and voluntary waiver test. The court is also persuaded that the Supreme Court of Virginia would likely concur with the reasoning in *Irving Trust* and place the burden on the party seeking to be relieved from the effect of such a contractual provision for multiple reasons. First, the decisions of Virginia's highest court have been clear and consistent that it is the role of the judiciary to enforce, and when necessary, interpret the terms of a contract but not to write, or rewrite, a contract for the parties. *Graphic Arts Mut. Ins. Co. v. Warthen Co.*, 240 Va. 457, 460, 397 S.E.2d 876, 878 (1990). Second, it is axiomatic in Virginia that courts are bound to conclude that the parties intend what their written contracts plainly declare. *W. F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). As a result, when interpreting any part of a contract, courts must construe the contract as a whole. *Landsdowne Dev. Co. v. Xerox Realty Corp.*, 257 Va. 392, 401, 514 S.E.2d 157, 161 (1999); *Vega v. Chattan Assocs.*, 246 Va. 196, 199, 435 S.E.2d 142, 143 (1993). Indeed, Virginia law presumes that parties have not needlessly inserted words or provisions into their contracts, and therefore, all words contained in a contract must be given effect if it is reasonably possible to do so. *Ames v. American Nat'l Bank*, 163 Va. 1, 38, 176 S.E. 204, 216-17 (1934); see also *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984); *Barrett v. Vaughan & Co.*, 163 Va. 811, 817, 178 S.E. 64, 68 (1935). Thus, no word or provision in a contract will be treated as meaningless, if a reasonable construction can be given to it. *Winn* at 307, 315 S.E.2d at 194; *Barrett*, 163 Va. at 817, 178 S.E. at 68. Ultimately, courts must enforce contracts as written, and a contract "becomes the law of the case unless the contract is repugnant to some rule of law or public policy." *D. C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995); *Mercer v. South Atlantic Ins. Co.*, 111 Va. 699, 704, 69 S.E. 961, 962 (1911).

It is with these fundamental tenets of Virginia jurisprudence in mind that this court must evaluate the tension between the liberty interest inherent in the right to contract and the constitutional right to a jury trial. After full consideration of the relevant authorities, this court finds persuasive the

analysis and conclusion of the D.C. Court of Appeals in *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108 (D.C. 2002). The *Pers Travel* court reviewed a determination made by a trial court concerning the enforceability of a jury waiver provision in a commercial lease for office space in the Georgetown section of the District of Columbia. In *Pers Travel*, the lessee, contended that the trial court had erred in finding that *Pers Travel* had knowingly and voluntarily waived its right to a jury trial pursuant to the terms of the lease. The D.C. Court of Appeals acknowledged that it had yet to decide the jury waiver validity question and focused on the analysis undertaken by various courts which had ruled on the issue.

The *Pers Travel* court noted that different courts had weighed various factors in their analyses, yet it decided not to "endorse any specific list or catalogue of factors, since they will almost certainly vary from one case to another." *Id.* at 1112. Relying principally on decisions from New York and Massachusetts, the *Pers Travel* court implicitly adopted a test that jury waiver clauses "are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." *Id.* at 1111 (quoting *Chase Commercial Corp. v. Owen*, 32 Mass. App. 248, 253, 588 N.E.2d 705, 708 (1992)). Specifically, the court rejected the tenant's argument that it had not read the lease and therefore should not be bound by the lease's terms. In doing so, the *Pers Travel* court concluded that:

> [w]hile the lease in this case is a standard form contract that was apparently signed with little or no focus on the jury waiver clause, that fact alone does not void the waiver. The fact that the waiver language may be "buried" in a standard lease agreement (and "written in language comprehensible only to a landlord-tenant lawyer") is not enough to vitiate the general rule that a jury waiver clause in a lease is valid and binding on the parties.

*Id.* at 1112 (quoting *Fowler Court Tenants, Inc. v. Young*, 119 Misc. 2d 492, 496, 463 N.Y.S. 2d 686, 689-90) (N.Y. Civ. Ct. 1983) (internal citations omitted). In addition, the *Pers Travel* court addressed the possible obligation on a party drafting a jury waiver provision to emphasize it in an agreement and determined that:

> [M]ost courts have imposed no obligation on the drafter of a lease to highlight the jury waiver clause to ensure its validity. A New York appellate court, for example, in enforcing a jury

waiver provision, noted that "the size of the print setting forth the jury waiver provision is identical to that of almost all other printed covenants and conditions of the lease."

*Id.* (quoting *Estate of Greenberg v. Schefler*, 102 Misc. 2d 308, 309, 425 N.Y.S.2d 909, 910 (N.Y. App. Term 1979) (internal citations omitted).

Finally, the *Pers Travel* court also rejected the argument that simply because a lease was a standard form contract between a landlord and a tenant, an inequality of bargaining power necessarily existed. *Id.* at 1112. While recognizing that some courts had relied upon disparity in bargaining power and print size as factors supportive of invalidating jury waiver provisions, it instead adopted the determination in *Telum, Inc. v. E. F. Hutton Credit Corp.*, 859 F.2d 835 (10th Cir. 1988), *cert. denied*, 490 U.S. 1021 (1989), to distinguish those cases. The *Telum* court had concluded that:

> [Those] decisions relied on facts such as *inconspicuousness*, fine print, or a *gross disparity* in bargaining power to invalidate jury waiver provisions. Telum and Hutton, on the other hand, were both *sophisticated parties* and the provision here was in the normal print size of the contract.

*Telum*, 859 F.2d at 837 (1989) (emphasis added). Finding the jury waiver in *Pers Travel* neither unconscionable nor contrary to public policy based upon "the particular circumstances presented" in that case, the D.C. Court of Appeals affirmed the trial court's conclusion that the jury waiver was enforceable.

Bedrock principles of Virginia contract law support this court's adoption of the *Pers Travel* court's test and analysis. As the Supreme Court of Virginia held in *First Nat'l Exchange Bank v. Johnson*, 233 Va. 254, 355 S.E.2d 326 (1987), "in the absence of fraud, duress, or mutual mistake, an individual having the capacity to understand a written document who signs it after reading it, *or who signs it without reading it, is bound by the signature.*" *Id.* at 259, 355 S.E.2d at 330 (emphasis added) (hereinafter "*Exchange Bank*"). Indeed, in *First Va. Bank-Colonial v. Masri*, the Supreme Court overturned a trial court's judgment in favor of a party who had testified that he had not read a waiver provision on the reverse side of the document in issue. 245 Va. 461, 428 S.E.2d 903 (1993). Notwithstanding the failure to read the waiver provision, the *Masri* court found that the party had nonetheless waived the underlying claim which had supported the trial court's judgment. *Id.* Noting that the party was a physician, who unquestionably had the capacity to

understand the document that he executed, the Court cited its earlier decisions in *Exchange Bank* and *Metro Realty of Tidewater, Inc. v. Woolard*, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982), and reiterated that absent fraud, duress, or mutual mistake, one who has the capacity to understand a document is bound by that party's signature on the document whether the document was read or not. *Masri* 245 Va. at 463-64, 428 S.E.2d at 904. This principle is particularly pertinent when the party sought to be bound is a sophisticated business person involved in an arm's length transaction. *Id.*; see also *Curtis v. Lee Land Trust*, 235 Va. 491, 369 S.E.2d 853 (1988) (finding contents of documents binding and respective bargaining positions equal in transaction between "sophisticated businessman" and land dealer).

Here, cognizant of the important right that would be waived if this court were to uphold the jury trial waiver provision in the Agreement, the court gave Samson Realty an opportunity to alert the court to any specific circumstances surrounding the execution of the Agreement which would render an evidentiary hearing appropriate before the court ruled. In response, Samson Realty submitted the affidavit of Mr. Samson. Based upon the contents of this affidavit, Samson Realty contends that an evidentiary hearing must be conducted before the court can rule on the validity of the jury waiver provision in the Agreement. The court disagrees. In fact, none of the averments in Mr. Samson's affidavit could possibly serve as a basis to alter the court's ultimate legal conclusion.

First, to sustain Samson Realty's position that that an evidentiary hearing is now mandated would require this court to ignore the plain language which framed the Data Sheet, contrary to well established principles of Virginia law. See *W. F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. at 264, 123 S.E. at 381 (1962). Both in the Preamble to and the Execution/Acknowledgement of the Data Sheet, the multiple components of the Agreement are explicitly enumerated, thereby plainly manifesting the intent of both parties to be bound by the terms of the entire Agreement, including Section 19.04. The fact that Mr. Samson may have decided not to read the terms of the written lease he executed on behalf of Samson Realty is irrelevant under Virginia law, absent fraud, duress, mutual mistake, or lack of capacity. See *Masri* 245 Va. at 463-64, 428 S.E.2d at 904; *Exchange Bank*, 233 Va. at 259, 355 S.E.2d at 330. No allegations supporting any such defenses are contained in Mr. Samson's affidavit. Nor is it of any moment that the jury waiver provision is merely one clause in an agreement consisting of fifty-nine pages, absent an allegation that the jury waiver provision was hidden in particularly inconspicuous print. See *Pers Travel*, 804 A.2d at 1112 (reasoning that it is not enough to vitiate the general rule that a jury waiver

clause in a lease is valid and binding on the parties where "waiver language may be buried in a standard lease agreement and written in language only comprehensible to a landlord-tenant lawyer") (internal quotations omitted). Mr. Samson does not contend, nor would a review of the Agreement support a finding, that Section 19.04 was hidden in particularly inconspicuous print.

Second, Mr. Samson's allegation that there were no negotiations between the parties with respect to the Standard Form is equally unavailing. The Agreement at issue here is a lease agreement entered into by Samson Realty, an entity that itself leases commercial real estate. The contention that the owner and agent of a seasoned real estate company could decide not to read a lease agreement for real property, yet expect not to be bound by its terms is simply untenable. This is not an instance where one party had such expertise the other lacked or where the transaction was either unconscionable or fundamentally unfair. See *Pers Travel*, 804 A.2d at 1111. Finally, Mr. Samson's claimed lack of awareness (1) of his right to a jury trial and (2) that he was waiving that right are not determinative, even if the court were to accept them as true. The failure to read the language of an agreement informing a party of relevant information cannot vitiate the effect of that language on a party who executes the agreement. *Masri*, 245 Va. at 464, 428 S.E.2d at 904; *Exchange Bank*, 233 Va. at 259, 355 S.E.2d at 329-30.

Therefore, consistent with the holding in *Pers Travel*, absent evidence that a particular jury waiver clause is unconscionable, offends public policy, or is unfair given the particular circumstances of a case, this court declines to treat plain and unambiguous jury waiver provisions in a commercial lease in a manner inconsistent with the way Virginia law treats all other provisions of such contracts. To rule otherwise could potentially reward those persons who conduct their business affairs in a less than diligent manner. Moreover, such a rule would inevitably embroil the courts in ever increasing *post hoc* inquiries into what parties actually intended in all situations where a claim is made that one side did not read such a provision in a commercial agreement.[1] As Mr. Samson's affidavit contains no allegations that could materially affect the court's analysis of the Motion to Strike Defendant's Jury Demand, the court declines to hold a second hearing on that motion so that Samson Realty can present evidence.

---

[1] Such jury waiver provisions are seemingly becoming commonplace in commercial transactional agreements.

### III. *Conclusion*

Under Virginia law, Samson Realty, by the signature of its agent, is bound to all of the terms of its Agreement with Fairfax Company, including Section 19.04. Accordingly, the plaintiff's Motion to Strike the Defendant's Jury Demand is granted.